**Raul DAVID, Petitioner,**

v.

**F. LAVINGE, Respondent.**

No. 00–CV–75132–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 8, 2002.

Raul David, Freeland, MI, pro se.

Brenda E. Turner, Bethany L. Scheib, Michigan Dept. of Atty. Gen., Habeas Corpus Div., Lansing, MI, for F. Lavinge.

## MEMORANDUM OPINION AND ORDER

O'MEARA, District Judge.

This matter is before the Court on petitioner Raul David's *pro se* habeas corpus petition under 28 U.S.C. § 2254. The Court has concluded for the following reasons that the habeas petition must be denied.

### I. *Background*

On April 19, 1996, a jury in Oakland County, Michigan convicted Petitioner of possession with intent to deliver at least 650 grams of cocaine, MICH.COMP.LAWS § 333.7401(2)(a)(i), and conspiracy to deliver at least 650 grams of cocaine, MICH. COMP.LAWS § 750.157a. The convictions arose from charges that Petitioner, Luis Rosado, and Daniel Rodriguez agreed to sell a kilogram of cocaine to Corey Harvey and that Petitioner delivered the cocaine to Rosado's home in Pontiac, Michigan. Unbeknownst to Petitioner and his co-defendants, Corey Harvey was a police informant. At trial,

> [t]he informant testified that he contacted Rodriguez, asking Rodriguez if he could get him a kilogram of cocaine. The informant told Rodriguez he had a buyer willing to pay $28,000, and the informant would pay Rodriguez $26,000. Rodriguez told the informant that he would have to contact someone and get back with the informant. Eventually, Rodriguez told the informant that he was able to get him a kilogram from some people who would be coming in from Detroit. Following Rodriguez' instructions, the informant picked Rodri-

guez up at his house and Rodriguez gave him directions to Rosado's house. Rodriguez introduced the informant to Rosado. They went to the basement where Rosado presented a brick of cocaine, offering it to Rodriguez. Rodriguez would not take it, so Rosado handed it to the informant. The informant checked the cocaine. There was a knock on the door, and Rosado went upstairs. When Rodriguez and the informant went upstairs, leaving the cocaine behind, Raul David was in the house. The informant asked Rodriguez if David was the man from Detroit. Rodriguez told him he was.

*People v. David,* No. 196876, 1998 WL 1988910, **2–3 (Mich.App. Nov.10, 1998). Shortly thereafter, the police raided the house and arrested Petitioner.

The trial court sentenced Petitioner to concurrent terms of life imprisonment for the convictions. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* opinion. *See id.* at *1. On October 6, 1999, the Michigan Supreme Court denied Petitioner's subsequent application for leave to appeal because it was "not persuaded that the questions presented should be reviewed...." *People v. David,* 461 Mich. 881, 602 N.W.2d 582 (1999).

On December 7, 2000, Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254. The grounds for relief read as follows:

I. Petitioner was denied his due process rights under the Fourteenth Amendment of the United States Constitution where the trial court denied Petitioner's motion to quash Count I, possession with intent to deliver more than 650 grams of cocaine, and Count II, conspiracy to possess more than 650 grams of cocaine, where the only evidence presented at the preliminary examina-

tion as Petitioner's guilt was a statement testified to by the People's informant that a co-defendant had stated that Petitioner had brought the cocaine to Pontiac from Detroit.

II. Petitioner was denied due process of the Fifth and Fourteenth Amendment to the United States Constitution where the trial court ruled that Petitioner's statement, given to police within hours of his arrest and without the benefit of counsel, was made understandingly and voluntarily and was therefore admissible against him at trial.

III. Petitioner was denied his due process rights under the Fourteenth Amendment of the United States Constitution where the trial court admitted an alleged co-conspirator's statement to the effect that the Petitioner had brought the cocaine from Detroit to the delivery point upon a ruling that such a statement was being made in furtherance of the conspiracy to deliver more than 650 grams of cocaine.

IV. Petitioner was [denied] due process as guaranteed by the Fourteenth Amendment to the United States Constitution where the trial court denied Petitioner's motion for a directed verdict, brought at the conclusion of the People's case in chief, and based upon the failure of the people to present a prima facie case that Petitioner either possessed any cocaine or was involved in the alleged conspiracy.

V. Petitioner was denied due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution where the trial court denied Petitioner's request that an instruction be given

to the jury on accessory after the fact where, before closing arguments, the trial court had stated that, such an instruction would be given.

VI. Petitioner was denied due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution where there was insufficient evidence presented at trial to support the jury's finding of guilt beyond a reasonable doubt on the charges of possession with intent to deliver 650 grams of cocaine and conspiracy to possess more than 650 grams of cocaine.

Respondent urges the Court to deny the petition on the grounds that Petitioner's claims are not cognizable on habeas review or they lack merit.

■ Petitioner is entitled to habeas relief only if he can show that the state court's adjudication of his claims on the merits—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under the "contrary to" clause of § 2254(d)(1),

a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but un-

reasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

## II. *Discussion*

### A. *Sufficiency of the Evidence at the Preliminary Examination*

Claim I alleges that the trial court deprived Petitioner of due process when it denied his motion to quash the criminal charges. Petitioner contends that he should not have been bound over to circuit court on the two charges against him because there was insufficient evidence presented at the preliminary examination.

■ Petitioner had no constitutional right to a preliminary hearing. *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 26, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir.1965). His claim raises only a matter of state law and procedure; it does not involve a federal question of fundamental fairness or constitutional protection. *Oliphant v. Koehler*, 451 F.Supp. 1305, 1307 (W.D.Mich.1978). Consequently, Petitioner's claim cannot form the basis for federal habeas corpus relief. *Id.; see* 28 U.S.C. §§ 2241(c)(3) and 2254(a) (authorizing the writ of habeas corpus only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States"); *see also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) (stating that federal courts may not issue the writ of habeas corpus on the basis of a perceived error of state law). To the extent that Petitioner is challenging the sufficiency of the evidence to convict him, his allegations lack merit for the reasons given in the discussion on claims IV and VI.

### B. *Petitioner's Statement to the Police*

Petitioner's second claim alleges that the trial court deprived him of due process

when it ruled that his statement to the police was voluntary and intelligent and, therefore, admissible in evidence. Petitioner alleges that his statement was involuntary because the police denied his request for an attorney, refused his request to call home, and told him that, if he did not cooperate, he would never see his children again. Petitioner argues that his decision to make a statement was not an intelligent waiver, but a product of fear and intimidation.

## 1. *Supreme Court Precedent*

The Fifth Amendment states that "[n]o person shall be ... compelled in any criminal case to be a witness against himself...." U.S. CONST. amend. V.[1] To protect this right, an individual who

> is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning ... must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[2]

After a suspect expresses a desire to deal with the police only through counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477,

484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The Supreme Court has declined "to extend *Edwards* and require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to any attorney." *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

If there was no violation of the Edwards rule,

> the next inquiry [is] "whether a valid waiver of the right to counsel and the right to silence ... occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances...." [T]his determination depends "upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused."

*Oregon v. Bradshaw*, 462 U.S. 1039, 1046, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) (citations omitted).

> No single litmus-paper test for constitutionally impermissible interrogation has been evolved: neither extensive cross-questioning ...; nor undue delay in arraignment ...; nor failure to caution a prisoner ...; nor refusal to permit communication with friends and legal counsel at stages in the proceeding when the prisoner is still only a suspect....
>
> Each of these factors, in company with all of the surrounding circumstances—the duration and conditions of detention (if the confessor has been detained), the manifest attitude of the po-

---

**1.** The Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

**2.** The Supreme Court recently declined to overrule *Miranda* and held "that *Miranda* and

its progeny in this Court govern the admissibility of statements made during custodial interrogation in both state and federal courts." *Dickerson v. United States*, 530 U.S. 428, 432, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

lice toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance and self-control—is relevant. The ultimate test remains that which has been the only clearly established test in Anglo–American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession.

*Culombe v. Connecticut,* 367 U.S. 568, 601–02, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (citations and footnote omitted).

"[S]ubsidiary factual questions, such as ... whether in fact the police engaged in the intimidation tactics alleged by the defendant" are entitled to the presumption of correctness accorded a state court's determination of a factual issue. *Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). "And the federal habeas court, should, of course, give great weight to the considered conclusions of a coequal state judiciary." *Id.* (citing *Culombe,* 367 U.S. at 568, 81 S.Ct. 1860).

### 2. The State Court's Analysis

The Michigan Court of Appeals adjudicated Petitioner's claim as follows:

David next asserts that his statement to the police was inadmissible because it was involuntary and not understandingly made. A trial court's determination as to the voluntariness of a statement is reviewed by examining the entire record and, based on the totality of the circum-

stances, making an independent determination whether the statement is " 'the product of an essentially free and unconstrained choice by its maker' or whether the accused's 'will has been overborne and his capacity for self-determination critically impaired.' " [*People v. Gould,* 225 Mich.App. 79, 88, 570 N.W.2d 140 (1997) ]; *People v. Peerenboom,* 224 Mich.App. 195, 198, 568 N.W.2d 153 (1997). We must "defer to the trial court's superior ability to view the evidence and witnesses" and may not disturb the trial court's findings absent clear error. *Peerenboom, supra; Gould, supra.*

At his *Walker*[3] hearing, David testified that he requested an attorney and indicated that he did not wish to make a statement. He claimed that his request for an attorney was denied. According to David, the officers told him that he faced life in prison without parole and that he would never see his family again. If he cooperated, however, he would go home that day. The interviewing officer, on the other hand, testified that David simply waived his rights and indicated that he wanted to cooperate. The officer stated that he never threatened or promised anything to David, and denied ever telling David that it would be in his best interest to make a statement.

At the beginning of David's statement, after he acknowledged that he understood his rights, the following exchange took place:

*BP (interviewing officer):* Do you wanna talk to a lawyer before answering questions, or do you want to cooperate like we've been speaking, uh, like you said, uh, you wanted to cooperate and speak to us?

*RD (defendant David):* If it [sic] be better.

**3.** *People v. Walker,* 374 Mich. 331, 338, 132 N.W.2d 87(1965).

*BP:* You have to answer. Would you rather, do you want to cooperate and speak to us like you've indicated?

*RD:* Yes.

The circuit court concluded that David's request for counsel was at best ambiguous. We agree. *People v. Granderson,* 212 Mich.App. 673, 677–678, 538 N.W.2d 471 (1995). Further, the court did not find credible David's claims regarding his understanding of his rights, his assertion of his right to counsel before the tape was started, and the alleged threats and promises. We will not disturb the circuit court's credibility determination, *Peerenboom, supra,* and affirm the court's finding that David's statement was made voluntarily and understandingly.

*David,* 1998 WL 1988910, *6 (footnote in original).

■ This Court agrees with the state courts' conclusion that Petitioner's comment "if it be better" was, at best, an ambiguous request for counsel. Moreover, the state courts' assessment of the officer's and Petitioner's credibility is entitled to the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1) (stating that "a determination of a factual issue made by a State court shall be presumed to be correct" and that the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence").

Petitioner has not rebutted with clear and convincing evidence the presumption that the state court's factual determination was correct. Accordingly, the Court rejects Petitioner's allegations that his statement to the police was involuntary and that the state court erred in admitting his statement into evidence. The state court's conclusions did not result in a decision that was an unreasonable determination of the facts or an unreasonable application of Supreme Court precedent.

## C. *The Co–Conspirator's Statement*

■ Petitioner's third claim alleges that the trial court violated his right to due process when it admitted an alleged co-conspirator's statement into evidence. Petitioner argues that the statement was made after the objective of the conspiracy was accomplished and, therefore, the co-conspirator's statement was mere idle chatter, which was inadmissible hearsay.

The trial court ruled that the statement was admissible under state law because it was made in furtherance of the conspiracy to deliver cocaine. The Michigan Court of Appeals agreed with the trial court.

■ Federal courts may not grant the writ of habeas corpus on the basis of a perceived error of state law. *Harris,* 465 U.S. at 41, 104 S.Ct. 871. Therefore, "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders,* 34 F.3d 352, 357 (6th Cir.1994); *see also Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir.2000) (explaining that errors in the application of state law, especially rulings on the admission or exclusion of evidence, usually are not questioned in a federal habeas corpus proceeding unless the errors violate a fundamental principle of justice) (citations omitted), *cert. denied,* 532 U.S. 989, 121 S.Ct. 1643, 149 L.Ed.2d 502 (2001).

Petitioner's claim arose when the informant testified about Daniel Rodriguez' comment to him as the two men were leaving Luis Rosado's home. As explained by the Michigan Court of Appeals, the informant testified

that he arranged a purchase of a kilogram of cocaine through Rodriguez, who told the informant that the cocaine was coming from a person in Detroit to a person in Pontiac. They went to the Pontiac location and met [Luis] Rosado.

The three men went into the basement of the house and the informant examined a brick of cocaine. While they were in the basement, there was a knock at the door, and Rosado left the basement. The informant testified that after a few seconds he became uncomfortable because he did not know who was at the door. He went upstairs, with Rodriguez following, and saw David. The informant was not introduced to David. The informant asked Rodriguez whether David was the man from Detroit who had brought the kilogram of cocaine. Rodriguez answered, "yes."

*David*, No. 196876, 1998 WL 1988910 (summarizing the informant's testimony at the preliminary examination, which was similar to the informant's testimony at trial).

Petitioner's claim is based on Michigan Court Rule 801(d)(2)(E), which provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy" is not hearsay. Petitioner is not arguing that the alleged error violated his rights under the Confrontation Clause, which would be the constitutional basis for his claim.

Furthermore, the following excerpt from the state court opinion demonstrates that the state court treated Petitioner's claim strictly as a state evidentiary issue:

A statement that advances or promotes an object of the conspiracy is considered made in furtherance of the conspiracy. *People v. Centers*, 141 Mich.App. 364, 376, 367 N.W.2d 397 (1985), rev'd on other grounds 453 Mich. 882, 554 N.W.2d 10 (1996). Statements made in furtherance of a conspiracy have been characterized as those that "prompt the listener ... to respond in a way that promotes or facilitates the carrying out of a criminal activity" and may include "statements that provide reas-

surance, or seek to induce a coconspirator's assistance or serve to foster trust and cohesiveness...." *People v. Bushard*, 444 Mich. 384, 395–396, 508 N.W.2d 745 (1993) (Boyle, J). As explained in *United States v. Monus*, 128 F.3d 376, 392–393 (C.A.6, 1997):

"A statement is 'in furtherance of' a conspiracy if it is intended to promote the objectives of the conspiracy." We have recognized that "statements which prompt a listener to act in a manner that facilitates the carrying out of the conspiracy are admissible under [FRE 801](d)(2)(E)." Statements that "identify participants and their roles in the conspiracy" also qualify as statements made in furtherance of the conspiracy. [Citations omitted.]

Thus, the court properly concluded that Rodriguez' statement confirming the identity of David and that he was a participant in the transaction was made in furtherance of the conspiracy. The informant was seeking reassurance that David was "okay," and the statement was made in that context.

*David*, No. 196876, at **5–6.

Petitioner raises only an issue of state law. Therefore, the Court declines to question the state court's decision to admit the co-conspirator's statement into evidence. *Clemmons*, 34 F.3d at 357; *Seymour*, 224 F.3d at 552.

### D. *Sufficiency of the Evidence*

Petitioner's fourth claim alleges that the trial court deprived him of due process when it denied his motion for a directed verdict of acquittal on the charges. Petitioner's sixth claim alleges that there was insufficient evidence presented at trial to support the jury's verdict on the charges. Petitioner alleges that there was no evidence that he either possessed the cocaine or conspired to possess

it. He contends that the cocaine was delivered to Rosado's home before he arrived there and that he was merely present when the police raided the house.

### 1. *Supreme Court Precedent*

The Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). After *Winship*, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (internal citation and footnote omitted) (emphasis in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16, 99 S.Ct. 2781.

### 2. *The State Court Decision*

The Michigan Court of Appeals explained the elements of the offenses and summarized the evidence at Petitioner's trial as follows:

> David next argues that the trial court erred in denying his motion for directed verdict based on the insufficiency of the evidence to establish that he possessed cocaine or was involved in a conspiracy

to deliver cocaine. We disagree. Similar to a review of the evidence supporting a conviction, [*People v. Wolfe*, 440 Mich. 508, 513–514, 489 N.W.2d 748, amended on other grounds, 441 Mich. 1201, 489 N.W.2d 748 (1992)], this Court reviews a trial court's ruling on a motion for directed verdict by considering the evidence admitted by the prosecution up to the time the motion is made in a light most favorable to the prosecution to determine whether a rational factfinder could find the essential elements of the offense proven beyond a reasonable doubt. *People v. Vincent*, 455 Mich. 110, 121, 565 N.W.2d 629 (1997), *People v. Peebles*, 216 Mich.App. 661, 664, 550 N.W.2d 589 (1996).

> We first examine David's argument as to the possession with intent to deliver conviction. The elements of possession with intent to deliver 650 grams or more of cocaine require proof that (1) the recovered substance is cocaine; (2) the cocaine is in a mixture weighing 650 grams or more; (3) the defendant was not authorized to possess the substance; and (4) the defendant knowingly possessed the cocaine with the intent to deliver. *See Wolfe, supra* at 516–517, 489 N.W.2d 748; MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). There is no dispute that the evidence supported a finding of the first three elements of the offense. David argues that he did not possess the cocaine and thus did not possess it with intent to deliver.

> In establishing the possession element, the prosecution need not prove actual physical possession; proof of constructive possession is sufficient. [*People v. Konrad*, 449 Mich. 263, 271, 536 N.W.2d 517 (1995)]. Furthermore, the defendant may share actual or constructive possession with another. *Id.* The critical element is that the defendant have dominion or control over the sub-

stance, which requires that he have the right to possess it. *Id.* To prove constructive possession, however, there must be more evidence than that the defendant was present at the location where the substance was found. *Wolfe, supra* at 520, 489 N.W.2d 748. There must be an additional connection between the defendant and the substance. *Id.* "[C]onstructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband," and the finding that the defendant exercised dominion and control over the substance may be established through inferences drawn from direct or circumstantial evidence. *Id.* at 521, 489 N.W.2d 748.

David was also charged on an aiding and abetting theory. An aider and abettor may be convicted and punished as if he were a principal. MCL 767.39; MSA 28.979; *People v. Turner,* 213 Mich.App. 558, 568, 540 N.W.2d 728 (1995). Aiding and abetting encompasses all forms of assistance a defendant may give the principal and includes all words or conduct that might support, encourage or incite the commission of a crime. *Turner, supra.* To support a conviction of a defendant as an aider and abettor, the prosecution must prove that (1) the defendant or another person committed the offense; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant either intended the commission of the crime or knew that the principal intended to commit the crime at the time the defendant gave the aid and encouragement. *Id.* An aider and abettor must possess the same requisite intent as is required by the principal, *People v. Barrera,* 451 Mich. 261, 294, 547 N.W.2d 280 (1996), but the factfinder may infer the aider and abettor's state of mind from the facts and circumstances. *Turner, supra.* Al-

though the principal's guilt must be proven, he need not be convicted. *Id.* at 569, 540 N.W.2d 728. The prosecutor must present sufficient evidence to demonstrate that the crime was committed and that the defendant either committed it or aided and abetted the principal. *Id.*

The prosecution presented evidence that the cocaine was brought from Detroit to Rosado's house. The informant testified that Rodriguez told him that David was "the guy from Detroit." Although he denied bringing the cocaine to Rosado, David admitted through his statement that he was at Rosado's to collect the money for the cocaine at the request of the person who supplied Rosado with the cocaine, and that he knew the money was in payment for the cocaine. David told police that Rosado asked him if he wanted to take the cocaine back because Rosado thought that the buyer was not going to go through with the deal. Further, David admitted that his fingerprints might be found on the cocaine. Additionally, as the prosecutor argued, consideration of David's statement in light of all the evidence in the case could support a reasonable inference that David was at the house twice that day, once before Rodriguez and the informant arrived, and a second time while they were there and the house was under surveillance. From this evidence, which we must view in favor of the prosecution, the jury could have concluded that David brought the cocaine to Rosado, thereby possessing it with intent to deliver, or that he had constructive possession of the cocaine while he waited for the money, or that he aided and abetted others in the possession with intent to deliver, by collecting the payment for the cocaine, which was a prerequisite of the transaction. Therefore, the trial court did not

err in denying defendant's motion for directed verdict on this count.

We now turn to the evidence regarding the conspiracy conviction. David told police that a man, whose name he did not want to divulge, called him the morning of the drug raid and asked him to pick up $23,000 from "Salo," who was identified as Rosado. Although the unidentified man did not tell David that the money was from a cocaine deal, David admitted that he knew that to be the case. David had been to Rosado's house before. When he arrived at Rosado's house, Rosado told him that he was waiting for someone to bring the money. David stated that he did not know that the kilogram was at Rosado's house when he got there, but that he figured out that it was at Rosado's when Rosado told him that he was waiting for another person. Rosado asked David if he wanted to take the cocaine back to Detroit because Rosado suspected that the deal was not going to go through. According to David, the person Rosado was waiting for pulled up when David and Rosado were on the porch. There was sufficient evidence to support a finding that David was part of a conspiracy to deliver the cocaine in exchange for money. The trial court did not err in denying David's motion for directed verdict.

*David,* No. 196876, 1998 WL 1988910, at **7–9.

■■■ Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of the evidence claims." *Gomez v. Acevedo,* 106 F.3d 192, 194 (7th Cir.), *vacated on other grounds,* 522 U.S. 801, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997). Furthermore, the *Jackson* standard recognizes that the fact finder's responsibility is to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts. *Brown v. Davis,* 752 F.2d 1142, 1147 (6th Cir.1985)

(quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). Reviewing courts also "must draw all available inferences, and resolve all issues of credibility, in favor of the jury's verdict." *Id.*

With these considerations in mind, the Court concludes that the state court's decision on Petitioner's sufficiency-of-the-evidence claims was not contrary to, or an unreasonable application of, *Jackson.* Therefore, Petitioner has no right to habeas relief on the basis of his fourth and sixth claims.

### E. *The Jury Instructions*

■■■ Petitioner's fifth claim alleges that the trial court deprived him of due process and a fair trial when it denied his request for a jury instruction on the lesser-included offense of accessory after the fact. Petitioner contends that the facts supported the request and that he was entitled to an instruction on the lesser-included offense because the penalty for delivery of more than 650 grams of cocaine is life imprisonment without the possibility of parole.

#### 1. *Supreme Court Precedent*

■■■ Petitioner relies on *Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), in which the Supreme Court stated that "the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Id.* at 208. The Supreme Court subsequently held in *Beck v. Alabama,* 447 U.S. 625, 627, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), that the death penalty may not be imposed for a capital offense if the jury was not permitted to consider a lesser-included non-capital offense, provided that the evidence would have supported such a verdict. The Supreme Court declined to decide whether the Due Process Clause

requires the giving of such instructions in a noncapital case. *See id.* at 638 n. 14, 100 S.Ct. 2382.[4] In 1998, which was before Petitioner's conviction became final, the Supreme Court held that state trial courts are not constitutionally required to instruct juries on offenses that are not lesser-included offenses under state law. *See Hopkins v. Reeves,* 524 U.S. 88, 90–91, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998).

### 2. *The State Court Decision*

The following excerpt from the state court's opinion demonstrates that accessory after the fact was not a lesser-included offense of the crimes for which Petitioner was charged.[5]

> David's final argument is based on the trial court' failure to instruct the jury on accessory after the fact. Before closing arguments, David requested an instruction on accessory after the fact. The court stated that it would give the instruction if supported by the facts.[6] In closing argument, defendant argued that the informant was lying when he testi-

fied that he asked Rodriguez if David was the "guy" from Detroit and that Rodriguez said "yes." He also argued that there was no evidence that David brought the cocaine to Rosado's house, and he neither possessed the cocaine nor intended to deliver it. Counsel argued that according to David's statement, David was at Rosado's only as a favor, to pick up the money. Counsel further argued that because the offense was complete when David arrived to pick up the money, he was merely an accessory after the fact. The prosecutor argued on rebuttal that David was not an accessory after the fact because he was aware of, and participated in, the actual offense, and did not simply arrive after the offense was completed and help cover-up.

> After argument, there was further discussion regarding the instruction:

> MR. SEIKALY [defense counsel]: The only thing I've got, your Honor, is that I want the accessory after the fact

---

**4.** The United States Court of Appeals for the Sixth Circuit has interpreted *Beck* to mean that the failure to instruct on lesser-included offenses in noncapital cases is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]" *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir.1990). Thus, in this Circuit, the failure to give a jury instruction on a lesser-included offense is not of a character and magnitude to be cognizable on federal habeas corpus review. *Id.*

**5.** The Court is quoting the lengthy state court analysis in full because the analysis thoroughly explains Petitioner's claim and because portions of the trial transcript quoted by the state court are missing from the record before this Court.

**6.** Immediately after argument on David's motion for directed verdict, the prosecutor asked for two minutes to prepare the black board for closing argument and defense counsel

asked to look at the extra jury instructions prepared by the prosecutor. The court allowed a short recess. When the court reconvened, the following colloquy transpired:

THE COURT: Please be seated. Are we now ready for closing?

M[S]. GUCCIARDO: Your Honor, it has come to my attention that Defense Counsel has asked for—asking for an instruction accessory after the fact. I'm objecting to that instruction. He's not being charged with being an accessory after the fact.

THE COURT: Accessory is a principle [sic].

MR. GUCCIARDO: Pardon?

THE COURT: Under the law, an accessory is a principle. If the facts disclose a possibility of accessory, it would be given.

COURT CLERK: All rise for the jury please.

MR. SEIKALY: I'm going to argue that, that's all he is.

(At 11:02 a.m., jury enters)

instruction, read to the jury. I don't have a secretary to type it up.

\* \* \* \* \* \*

I have no problem with you just reading it out of the book, if you want.

THE COURT: If I was reading it out of the book, it gives no consequences of what happens if they wanted to find him as an accessory after the fact.

MR. SEIKALY: Well, we'd have to give them another jury verdict. They could find him—

THE COURT: He's not charged with anything but possession and conspiracy.

MS. GUCCIARDO [prosecutor]: Right.

THE COURT: So the question is, if they find him as an accessory, I presume they have to find him not guilty, wouldn't they?

MR. SEIKALY: Mm-hmm.

THE COURT: Would you agree with that?

MS. GUCCIARDO: Yes.

THE COURT: Okay.

MR. SEIKALY: Then I'd want an instruction to that.

MS. GUCCIARDO: Is that what you're saying, that you—well, actually, let me think about that before I—

THE COURT: We'll discuss that. But if he's entitled to the—and there is evidence—if they disbelieve the evidence—

MR. SEIKALY: Then he's just—

THE COURT:—then he is possibly—they could find his [sic] an accessory after the fact.

MS. GUCCIARDO: Your Honor, I don't—

THE COURT: If they disbelieve the evidence. Now don't argue with the strength of the evidence. No sense going into that now.

MS. GUCCIARDO: No, I understand, but I want to say one thing in relation to that. I believe that the accessory after the fact instructions when you give it, when the crime is completed and they do something like to hide it or something like that, that's not—

THE COURT: It's customarily given in this matter. I agree. Maybe the better position would be that if they find that they don't believe any of this testimony, then he's not guilty. That's what you're saying. That's what you're really saying.

MR. SEIKALY: After arguing that he might be guilty as an accessory after the fact. That's why I want the instructions.

THE COURT: Let's look at that a little closer before we go in.

MS. GUCCIARDO: Yes, I don't think—

(At 12:07 p.m., Court recessed)

Arguments were then presented to Rosado's jury and then Rodriguez' jury. The instructions were then read to the jury without further record discussion of the accessory instruction. After the instructions were read, the issue was again addressed:

MR. SEIKALY: Well, your Honor, I'm not satisfied with the instructions. I think that an instruction as to accessory after the fact should have been given.

There was certainly enough evidence to show that something should have been said about that, that at the minimum, that there should have been an instruction indicating that if there [sic] was the jury's belief that Mr. David was guilty of being an accessory after the fact, that they would have to find Mr. David not guilty of the charges of possession of over 650 grams with intent to deliver and the conspiracy count.

THE COURT: I'm satisfied, sir, that the jury was appropriate [sic] instructed. I did indicate to the jury that if they

didn't find any of the elements on any of the charges as listed, then that charge must be a not guilty verdict. I did so instruct them and I think that covers that matter appropriately and I will not add to the instructions.

All right. Anything else, sir?

MR. SEIKALY: No.

. . . . .

As explained in *People v. Perry*, 218 Mich.App. 520, 526, 554 N.W.2d 362 (1996), lv gtd 457 Mich. 870, 618 N.W.2d 589 (1998):

Those who are only accessories after the fact by definition did not participate in the ... principal offense and did nothing in furtherance of it before or while it occurred. An accessory after the fact is a person who with knowledge of another's guilt gives assistance to that felon in an effort to hinder the felon's detection, arrest, trial or punishment. An accessory after the fact aids a perpetrator in the concealment of evidence of the crime or in the flight or concealment of the perpetrator. [*Perry, supra* at 534, 554 N.W.2d 362.]

In determining whether the instruction would have been proper, we will look at the evidence as David would have had the jury view it. There was no evidence that David merely assisted one of the other participants to hinder his arrest, trial or punishment, or merely aided in the concealment of the evidence. The person whose job it is to pickup the payment for the cocaine is not an accessory after the fact. David was either guilty of the principal offenses or not guilty. While David accurately observes that upon his arrest he concealed the identity of the supplier of the cocaine for whom he admitted he was picking up the money, this does not make him an accessory after the fact with regard to his participation in the principal offense. Further, he did not present this argument in support of his request for the instruction below. We conclude that David was not entitled to the accessory instruction.

*David,* 196876, 1998 WL 1988910, at \*\*8–11 (footnote in original).

 Despite the state court's conclusion that Petitioner was not entitled to the requested instruction, Petitioner argues that the trial court's delay in making a definitive ruling on his request violated his right to due process. The Michigan Court of Appeals resolved this issue as follows:

David argues that the trial court's failure to give the instruction compromised his position and constitutes error requiring reversal because he had tailored his argument to the instruction.

In *People v. Clark,* 453 Mich. 572, 556 N.W.2d 820 (1996), our Supreme Court addressed a similar, although distinguishable, situation. In three separate opinions, four justices concluded that a new trial was required where the trial court, after the prosecutor's argument, and with the prosecutor's acquiescence, erroneously agreed to the defendant's request for a modification in the involuntary manslaughter instruction; defense counsel argued based on the modified instruction; and the court later determined that the instruction as modified should not be given and gave the unmodified instruction. The lead opinion explained that not all such errors require reversal, and reversal is required only if the error was prejudicial. *Clark, supra* at 587, 556 N.W.2d 820 (Mallett, J.). Prejudice is determined by the effect of the error on substantial rights or its effect on the verdict. *Id.* at 588, 556 N.W.2d 820. Thus, we must determine whether David was prejudiced by the failure to instruct on accessory after the fact.

\* \* \* \* \* \*

We find Clark distinguishable in two respects. First, in *Clark* the trial court unequivocally stated that it would give the modified instruction. Here, the trial court stated that the instruction would be given if supported by the evidence. While the court should have been mindful of the court rule requiring that instructions be settled before argument, MCR 2.516, and should have resolved the issue finally before argument, counsel was apparently content with a ruling that was conditioned on the propriety of giving the instruction in light of the evidence. That condition was not met, as we have concluded that there was no evidence that David was an accessory after the fact. Further, in *Clark*, the instruction at issue pertained to a crucial element of the charged offense. "There was reliance on a mischaracterization of a critical issue that directly affected the theories argued by defense counsel that resulted in prejudice to the defense," *id.* at 587, 556 N.W.2d 820, and "the effectiveness of defense counsel's argument and the totality of the defense was impaired by counsel's reliance on inaccurate information regarding the jury instructions". *Id.* at 605, 556 N.W.2d 820. Here, the accessory argument was ancillary to counsel's argument that the informant was not credible and that the prosecution had not established David's guilt of the offenses. The argument was clearly intended to provide the jury with an alternative guilty verdict, but the failure to give the instruction did not undermine counsel's argument that David was not guilty of the charged offenses.

Moreover, the jury found, contrary to David's argument, that he both agreed with others to deliver the cocaine (conspiracy), and that he possessed it, or aided and abetted the possession of it, with the intent to deliver, thereby rejecting the theory that he did not participate in the principal offense. Had the jury believed that David did not bring the cocaine and did not exercise control over the cocaine, it could have found him guilty of the conspiracy count alone, on the theory that he only agreed to pick up the drug money. Thus, we conclude that David was not prejudiced by the trial court's instructional error, and the trial court's failure to instruct the jury as to accessory after the fact was not reversible error.

*Id.* at *11–12.

Petitioner has not shown that the state court's conclusions violated a federal constitutional right. He has not cited any Supreme Court decision, which holds that the trial court's change of mind violated his right to due process. Nor has Petitioner alleged that the change of mind violated his right to present a defense.

The Court concludes that the state court's adjudication of Petitioner's claim did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner's fifth claim does not warrant granting the writ.

### III. *Conclusion*

For all the reasons given above, the Court concludes that Petitioner is not entitled to habeas corpus relief. Accordingly, the application for the writ of habeas corpus is **DENIED.**