# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHARLISA CHARAY WOOD,

      Defendant-Appellant.

UNPUBLISHED
July 12, 2016

No. 326276
St. Clair Circuit Court
LC No. 14-002169-FC

Before: RIORDAN, P.J., and SAAD and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals her jury trial convictions of first-degree child abuse, MCL 750.136b(2), torture, MCL 750.85, and assault with intent to do great bodily harm less than murder, MCL 750.84. Defendant was sentenced to 19 to 50 years' imprisonment for her first-degree child abuse conviction, 19 to 50 years' imprisonment for her torture conviction, and 34 to 120 months' imprisonment for her assault with intent to do great bodily harm less than murder conviction. We affirm.

On July 25, 2014, defendant was caring for several children in her home that she shared with her boyfriend in Port Huron. One of those children was WH, who was defendant's boyfriend's four-year-old son. Defendant's boyfriend had left for work at 6:40 a.m. that morning and when he last saw WH the previous evening, he was acting normally and showed no signs of discomfort or pain. At approximately 2:30 p.m., police and paramedics responded to a call of a near drowning at defendant's home. When paramedics arrived at the home, they observed WH on the floor of the dining room. One of the paramedics, Eric Essmaker, observed that WH was not responsive and had labored breathing. Essmaker noticed that only WH's hair was wet, which Essmaker found odd because he was responding to a call of a near drowning. Defendant told Ernesto Fantini, a police officer on the scene, that she found WH face down in the water of the bathtub.

Upon placing WH in the ambulance, Essmaker removed WH's clothes to see if there were any other injuries. Essmaker observed that WH had bruises on his chest, abdomen, and arms. Essmaker also observed burns on WH's buttock, legs, and feet. WH was initially transported to Port Huron McLaren Hospital but was subsequently airlifted to Beaumont Hospital in Royal Oak, where he was met by Dr. Anne Fischer.

-1-

Upon examining WH, Fischer concluded that his injuries were not consistent with drowning. Fischer noted that WH was completely dry below his neck and a scan of WH's lungs did not show any fluid, which was contrary to would be expected in a patient who supposedly had nearly drowned. Fischer observed bruises, abrasions, and burns throughout WH's body. Given the nature of the burns on WH's arms, Fischer concluded that his arms had been held under hot water against his will. The scan of WH also revealed that he had suffered a lacerated liver and damage to both his spleen and pancreas. Dr. Marcus DeGraw, another physician at Beaumont, also concluded that the burns to WH's arms were the result of being forced under hot water.

Defendant testified at trial that WH was taking a bath while defendant was feeding WH's sister. Defendant testified that when she went to remove WH from the bathtub, she noticed that WH's body was limp and that water was coming out of his mouth. Defendant denied intentionally burning WH or harming him in any way.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support her convictions. We disagree. When reviewing a claim of insufficient evidence, this Court reviews the record de novo. *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999). This Court views the evidence in the light most favorable to the prosecutor and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 722-723; 597 NW2d 73 (1999). In doing so, only minimal circumstantial evidence is needed to establish a defendant's state of mind or intent. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

## A. FIRST-DEGREE CHILD ABUSE

"The elements of first-degree child abuse are (1) the person, (2) knowingly or intentionally, (3) causes serious physical or mental harm to a child." *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997) (footnotes omitted). "Person" is defined in the statute as "a child's parent or guardian or any other person who cares for, has custody of, or has authority over a child regardless of the length of time that a child is cared for, in the custody of, or subject to the authority of that person." MCL 750.136b(1)(d). First-degree child abuse is a specific intent crime. *People v Maynor*, 256 Mich App 238, 242; 662 NW2d 468 (2003).

Defendant claims that there was not proof that WH's injuries were sustained while she was home alone with him. However, WH's father testified that on the night of July 24, 2014, the night before WH's hospitalization, WH was acting normally and did not appear to be in pain. In addition, DeGraw testified that given the nature of WH's internal injuries, WH would have been in a great deal of pain that would have been apparent to WH's father and defendant. Thus, it was reasonable for the jury to infer from the evidence that defendant, who was the only adult home with WH the day of the incident, was the one who caused the injuries. Furthermore, a scan of WH's lungs failed to show any fluid within the lungs, which completely discredited defendant's claim of drowning.

-2-

Additionally, defendant's intent to cause serious physical harm to WH can clearly be inferred by the severity of WH's injuries, see *People v Howard*, 226 Mich App 528, 550; 575 NW2d 16 (1997), citing *People v Mills*, 450 Mich 61, 71; 537 NW2d 909 (1995), which included burns to his arms, legs, and feet; bruises throughout his body; and injuries to his liver, spleen, and pancreas.

Defendant asserts that WH's abdominal injuries could have been the result of WH falling from the top of the refrigerator while trying to reach food. However, DeGraw testified at trial that WH's injuries were the result of child abuse rather than an accident due to the nature and extent of the injuries. Defendant's reliance on the testimony of Dr. Frederick Coop is misplaced. When asked if the abdominal injuries could have been the result of an accidental fall, Coop testified, "I suppose it could happen that way." While this acknowledges the possibility that the fall could have caused some of the injuries, it does not explicitly reject DeGraw's findings. More importantly, even if the testimony did explicitly reject DeGraw's opinion, on appeal we are to resolve all conflicts in the evidence in favor of the prosecution. *Kanaan*, 278 Mich App at 619.

Defendant also maintains that the water in her home could not reach a high enough temperature to have burned WH and points to DeGraw's testimony in support of this contention. At trial, it was established that the water in the home could reach a temperature of up to 126 degrees. While cross-examining DeGraw, defense counsel asked if 125 degree water that was splashed onto a child for "just for an instant" would cause a second-degree burn. DeGraw responded that such an act would not cause a second-degree burn. However, DeGraw had testified earlier that if a child's arm was held under water that had a temperature between 120 and 130 degrees, the child's arm would burn within "a minute or two." In addition, Fischer testified that the nature of the burns on WH's arms indicated that his arms had been held under hot water against his will. Accordingly, because the jury could find that defendant had indeed held or constrained WH's arms under the hot water for a long duration, defendant's position that the water temperature somehow established that she could not be guilty, is misguided.

## B. TORTURE

In regard to the torture conviction, a defendant is guilty if she, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within her custody or control. MCL 750.85(1). "Great bodily injury" includes "internal injury, poisoning, serious burns or scalding, severe cuts, or multiple puncture wounds." MCL 750.85(2)(c)(*ii*). Here, WH suffered internal injuries to his liver, spleen, and pancreas as well as serious burns to his arms and legs. WH's father testified that WH was acting normally the night before his hospitalization, and DeGraw testified that, due to the nature of the internal injuries, WH's pain would have been apparent to anyone around him. These facts, coupled with defendant's implausible claim of drowning being refuted by the medical evidence, see *People v Unger*, 282 Mich App 210, 227; 749 NW2d 272 (2008) ("[A] jury may infer consciousness of guilt from evidence of lying or deception."), was sufficient evidence to allow the jury to conclude beyond a reasonable doubt that defendant was the person who inflicted these injuries on WH. Moreover, with evidence of second-degree burning, the jury clearly could have found that defendant indeed intended to cause WH extreme physical pain.

## C. ASSAULT WITH INTENT TO DO GREAT BODILY HARM

In order to convict a defendant of assault with intent to do great bodily harm less than murder, the following elements must be proven: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation omitted). Assault with intent to do great bodily harm less than murder is a specific intent crime. *Id*. As previously stated, testimony from WH's father and DeGraw establish that defendant was the only adult home with WH at the time he suffered his injuries. This fact, combined with defendant's fabrication that WH only suffered a near drowning, supports the inference that she inflicted the injuries upon WH. The severity of WH's injuries demonstrates defendant's intent to do great bodily harm. See *Howard*, 226 Mich App at 550, citing *Mills*, 450 Mich at 71. Therefore, there was sufficient evidence to support defendant's conviction.

## II. DOUBLE JEOPARDY

Defendant argues that she was subject to multiple punishments for the same offense in violation of double jeopardy because first-degree child abuse is a necessarily lesser included offense of torture. We disagree. In order to preserve a claim of a double jeopardy violation, the defendant must raise the issue in the trial court. *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008). Defendant did not raise this issue in the trial court; therefore, this issue is not preserved for appeal. This Court reviews unpreserved constitutional issues for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

The United States and Michigan constitutions protect defendants from being placed in jeopardy twice, or from being subject to multiple punishments for the same offense. US Const, Am V; Const 1963, art 1, § 15; see also *People v Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007). To determine if multiple convictions are for the "same offense," this Court applies the "same elements" test set forth in *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). *Smith*, 478 Mich at 296. The same elements test "emphasizes the elements of the two crimes. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *McGee*, 280 Mich App at 683 (quotation marks and citations omitted).

It is clear that both first-degree child abuse and torture contain an element that the other crime does not. We need not look further than the respective *mens rea* element for each conviction. The intent element for first-degree child abuse requires that the defendant knowingly or intentionally caused serious physical or mental harm to a child. *Gould*, 225 Mich App at 87. And in order to be convicted of torture, a defendant must have acted with the intent to cause cruel or extreme physical or mental pain and suffering. See *People v Schaw*, 288 Mich App 231, 233; 791 NW2d 743 (2010). As can be seen, these elements are different, and each of them is not found in the other crime. The fact that there may be a substantial overlap in the proofs offered to establish each of these elements is not controlling. See *McGee*, 280 Mich App at 683. Therefore, defendant has failed to show any double jeopardy violation.

## III. FAIR TRIAL

Defendant argues that her right to due process was violated when she was denied a fair trial on account that the jury was exposed to testimony that damp, tied-up clothes were found in the home weeks after the incident, even though the testimony and accompanying exhibits were later stricken by the trial court. We disagree.

While defendant objected to the admission of the testimony and photo exhibits, she only objected on relevance grounds and not on the due-process grounds raised on appeal. Thus, the issue is not preserved, see *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), and we review this constitutional issue for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 764.

After defendant was arrested, WH's father and defendant's sister, Chaqueita Latimer, went to the home to investigate. While they were in the basement of the home, WH's father and Latimer discovered tied-up clothes that were still damp. Believing this to be suspicious, WH's father and Latimer removed the clothes from the home and gave them to police. Photographs and testimony regarding the clothes were initially admitted into evidence. However, when the prosecution indicated that WH would not be testifying at trial, the trial court struck all evidence regarding the clothes from the record and instructed the jury to not consider it.

"Every defendant has a due process right to a fair trial . . . ." *People v Rose*, 289 Mich App 499, 517; 808 NW2d 301 (2010). The prosecution's theory was that the clothes were used to secure and hold WH in place under the bathtub faucet, but without WH's testimony, the court ultimately determined that there was insufficient foundation to allow the evidence to be admitted for this purpose.[1] "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Despite this presumption, defendant claims that there was "no way" that the jurors could "put this amount of evidence and this type of evidence out of their minds and considerations, even if the judge says it is stricken and they should not consider it." However, we do not agree: the "amount" of evidence was slight, and more importantly, this was not the type of evidence that had a lasting impact on the jury. Indeed, the prosecution never explained its theory of what role the clothes had in the abuse to the jury. Further, the record shows that the admitted photos were never shown to the jury. Accordingly, defendant's rights were preserved through the instructions provided to the jury.

Moreover, defendant cannot show how the jury's learning of the existence of the clothing denied her of a fair trial because, contrary to the court's ruling, there was sufficient foundation and relevance for the evidence's admission. Prior to the testimony of WH's father and Latimer regarding the clothes, Fischer had testified that, given the nature of the burns that WH suffered on his arms, the arms must have been held under hot water against his will. Fischer testified that humans will automatically withdraw their limbs from burning water. Therefore, WH's arms had

---

[1] The trial court claimed that the evidence was no longer "relevant" without WH's testimony, but the court's decision is best characterized as being one based on a lack of foundation. See MRE 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."); MRE 901(b)(1).

to have been restrained in some way to have been burned as they were. The tied-up clothes, which WH's father and Latimer testified were still somewhat damp and mildewed, provide an explanation regarding how WH was restrained under burning water. Therefore, the presence of the tied-up clothes in the home made it more probable than not that defendant used the clothes to restrain WH and thus satisfied the requirement for admissibility. See MRE 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The foundation was established for the evidence's admission through the testimony of WH's father and Latimer, who testified that they found the still-damp, peculiarly tied clothes in the basement of the house. To require a victim of a crime to testify before any instrumentality used in the crime could be admitted, stretches the foundation requirement to an impermissible level. It was up to the jury to decide how much weight to give the evidence, given the circumstances surrounding its discovery. See *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012); *People v Ortiz*, 249 Mich App 297, 300-301; 642 NW2d 417 (2001). Consequently, defendant has failed to demonstrate any plain error.

Defendant also argues that she was denied a fair trial when the trial court allowed the prosecution to display a scar on WH's arm to the jury. Defendant claims that the scar was irrelevant and was unfairly prejudicial. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The elements of the charged offenses are always at issue, and therefore, "the prosecution may offer all relevant evidence, subject to MRE 403, on every element." *Mills*, 450 Mich at 70. Evidence of injury is admissible to show the defendant's intent. *Id*. at 71. The prosecution was required to prove that defendant had the intent to cause serious physical harm, the intent to cause cruel or extreme physical pain, and the intent to do great bodily harm. *Stevens*, 306 Mich App at 628; *Schaw*, 288 Mich App at 233; *Gould*, 225 Mich App at 87. Evidence of WH's scarring on his arm demonstrated the severity of the injury, and thus made the existence of these various mental states more probable. Therefore, the evidence was relevant under MRE 401.

Although relevant, evidence nonetheless is subject to exclusion if "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." MRE 403. Evidence presents the danger of unfair prejudice if it would lead the jury to decide the case on an improper basis, such as emotion. *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). While the in-person display of the scar on WH's arm likely evoked an emotional response from the jury, it cannot be said that this was grounds for excluding the display from evidence. Evidence of WH's injury had a high degree of probative value because it helped establish defendant's intent. The evidence did not run afoul of MRE 403. Thus, because the evidence of the scar was admissible, defendant has failed to show how its admission denied her of a fair trial.

In sum, defendant has failed to show how she was denied a fair trial. And because defendant was not deprived of a fair trial, her accompanying claim that the trial court should have sua sponte granted a mistrial lacks merit as well. See *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008) ("A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way.").

IV. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor committed misconduct during trial. We disagree.

In order to preserve a claim of prosecutorial misconduct, the defendant must contemporaneously object to the alleged misconduct and ask for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because defendant never raised any objections based on prosecutorial misconduct, the issue is not preserved, and our review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 764. Thus, in the context of prosecutorial misconduct, reversal only is warranted if a curative instruction would have been inadequate to cure any prejudice. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003); see also *People v Taylor*, 275 Mich App 177, 185; 737 NW2d 790 (2007).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. In reviewing the propriety of a prosecutor's comments, this Court gives the prosecutor substantial leeway in the manner she chooses to argue the evidence. See *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). "[P]rosecutors should not resort to civic duty arguments that appeal to the fears and prejudices of jury members or express their personal opinion of a defendant's guilt, and must refrain from denigrating a defendant with intemperate and prejudicial remarks." *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995) (citations omitted). "Appeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). "Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *Id*. at 588.

Defendant's prosecutorial misconduct claim focuses primarily on remarks made during the prosecutor's closing argument. During her closing argument, the prosecutor stated that this case is "about violence and torture and agony." The prosecutor also argued that defendant's home, as opposed to being a safe place, "became the most dangerous place in the world" for WH and that "no human being should suffer the way that boy suffered." Defendant argues that these remarks were irrelevant, prejudicial, and appealed to the civic duty and sympathy of the jury.

A review of the record demonstrates that these remarks were proper. As an initial matter, it should be noted that the prosecution's arguments are not evidence. *Bahoda*, 448 Mich at 281. Therefore, defendant's claim that the prosecutor's remarks somehow violated MRE 401 and MRE 403 is meritless. Furthermore, the prosecutor's statement that this was a case about violence, torture, and agony was accurate. While defendant takes exception to the remarks about WH's agony and suffering and the description of defendant's home as the most dangerous place in the world, the prosecution is not required to present its argument in the blandest possible terms. *Aldrich*, 246 Mich App at 112. Additionally, contrary to defendant's contention, these statements make no reference to the civic duty of the jury.

Defendant also claims that the prosecutor interjected her beliefs into the case during closing argument. During closing, the prosecutor stated, "if there was ever an example of

treating another human being inhumanely, brutally, and sadistically and with the intention to torment, it's this case." A prosecutor is forbidden from interjecting her personal belief regarding defendant's guilt. *Bahoda*, 448 Mich at 282-283. While a prosecutor cannot make a statement of fact that is not supported by the evidence, she is permitted to argue the evidence and all reasonable inferences arising from the evidence. *Watson*, 245 Mich App at 588. Viewed in context, this statement was merely arguing that the evidence clearly demonstrated defendant's guilt. Therefore, this remark was proper.

Defendant also argues that the prosecutor denigrated her and defense counsel when she implored the jury not to "let them get away with that ridiculous story that she told you." A prosecutor is prohibited from "denigrating a defendant with intemperate and prejudicial remarks." *Bahoda*, 448 Mich at 282-283. However, a prosecutor is permitted to argue that the "defendant or defendant's witnesses were unworthy of belief." *Dobek*, 274 Mich App at 67. The prosecutor was simply arguing that defendant's testimony was incredible in light of all of the physical evidence that contradicted it. This did not constitute denigrating defendant or defense counsel. Defendant also argues that this remark constituted an improper appeal to the jury's sense of civic duty. However, this statement did not appeal to the fears or prejudices of the jury, nor did it address broader issues in the community. The statement was simply attacking the credibility of defendant.

Defendant also contends that the prosecutor improperly argued facts not in evidence when she stated that WH had burns on his legs. However, Essmaker explicitly testified that he observed burns on WH's legs. Defendant also avers that the prosecutor argued facts not in evidence when the prosecutor spoke of how scared WH must have been during his medical treatment and how he would suffer emotional trauma from this incident for the rest of his life. Although a prosecutor is prohibited from arguing facts not in evidence, the prosecutor may argue reasonable inferences from the evidence. *Watson*, 245 Mich App at 588. While WH did not testify that he was scared during his treatment, it can be inferred that, given the severity of the injuries and his young age, he was frightened during the process. In regard to the prosecutor's comment about emotional trauma, defendant is correct that there was no testimony introduced to support this medical conclusion. However, in light of the overwhelming evidence supporting defendant's guilt, it cannot be said that this one remark was outcome determinative. In other words, like the other instances of alleged misconduct discussed above, defendant is entitled to no relief because a curative instruction would have alleviated any prejudice. See *Ackerman*, 257 Mich App at 448.

Defendant also argues that the prosecutor engaged in misconduct while eliciting testimony from several witnesses. However, this claim necessarily fails, as the prosecutor's questions are not evidence, and a prosecutor's good-faith effort to admit evidence does not constitute misconduct. *Id.* There is nothing in the record to suggest that the questioning was done in bad faith.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant states that she was denied her right to the effective assistance of counsel. We disagree. The ultimate constitutional issue arising from an ineffective assistance of counsel claim is reviewed de novo. *People v LeBlanc*, 465 Mich 575, 582; 640 NW2d 246 (2002). Any

findings of fact are reviewed for clear error. *Id*. at 583. When no evidentiary hearing has been conducted, our review is limited to mistakes that are apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

In order to prevail on an ineffective assistance of counsel claim, a defendant must prove (1) "that counsel's performance fell below an objective standard of reasonableness" and (2) "that the representation so prejudiced the defendant as to deprive [her] of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In order for the defendant to satisfy the prejudice prong of the analysis, "a court must conclude that there is 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Pickens*, 446 Mich at 312, quoting *Strickland*, 466 US at 695.

Defendant alleges that the performance of defense counsel was deficient when counsel failed to move for a mistrial after the trial court struck all evidence regarding the tied-up clothes that were found by WH's father and Latimer. A trial court should only grant a mistrial when the prejudicial effect of an error cannot be cured any other way. *Horn*, 279 Mich App at 36. As already noted, the trial court's instructions to disregard the evidence sufficed because jurors are presumed to follow their instructions. *Graves*, 458 Mich at 486. Additionally, when viewed in the context of all the evidence against defendant, the jury's knowledge of the stricken testimony regarding the later-discovered clothes was not significant enough to overcome the presumption that the trial court's instructions cured any error. Thus, the request for a mistrial would have been unsuccessful, which means that her claim of ineffective assistance fails. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) ("Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion.").

Defendant also argues that the performance of defense counsel was deficient when counsel failed to "object to a number of the prosecutor's arguments." Defendant does not specify exactly which arguments counsel should have objected to, but presumably defendant is referring to the remarks that she believes constituted prosecutorial misconduct. As noted above, every remark that defendant believed to be misconduct, with the exception of the prosecutor's comment about how WH would suffer lifelong emotional trauma, was proper. Therefore, counsel's failure to object to these remarks did not constitute deficient performance because a defendant's attorney is not required to make futile objections. *Id.*

Assuming that counsel's failure to object to the statement regarding WH's emotional trauma constituted deficient performance, defendant is unable to demonstrate that she was prejudiced by this performance. There was overwhelming evidence in the record from police and medical professionals to support a finding of defendant's guilt. Furthermore, the trial court instructed the jury that the prosecutor's statements were not evidence and to disregard anything not supported by the evidence. Therefore, there is not a reasonable probability that, but for counsel's failure to object, the jury would have had a reasonable doubt respecting defendant's guilt.

Affirmed.

/s/ Michael J. Riordan
/s/ Henry William Saad
/s/ Michael J. Kelly