PEOPLE v GOULD

Docket No. 184342. Submitted January 7, 1997, at Detroit. Decided August
    15, 1997, at 9:25 A.M. Leave to appeal sought.

   Larry Gould, charged in the Manistee Circuit Court with alternative
   counts of first-degree child abuse and second-degree child abuse,
   was convicted by a jury of second-degree child abuse and sen-
   tenced by the court, James M. Batzer, J., to thirty to forty-eight
   months of imprisonment. The defendant had confessed to shaking
   the victim, a two-month-old child, and evidence at trial had indi-
   cated that the victim sustained bilateral subdural hematomas that
   were consistent with being shaken. The defendant appealed.

      The Court of Appeals held:

      1. First-degree child abuse, MCL 750.136b(2); MSA 28.331(2)(2),
   which requires for conviction proof that the accused knowingly or
   intentionally caused serious physical or mental harm to a child, is a
   specific intent crime. As used in the statute, the terms "knowingly"
   and "intentionally" are synonymous, i.e., "knowingly" means inten-
   tionally and implies a knowledge and purpose to do harm to a
   child. In denying the defendant's motion for a directed verdict with
   respect to the charge of first-degree child abuse, the trial court
   erred in determining that first-degree child abuse is a general intent
   crime. Nevertheless, the motion was correctly denied in view of
   sufficient evidence from which a rational trier of fact could have
   concluded that the essential elements of first-degree child abuse
   were proved beyond a reasonable doubt.

      2. The trail court did not err in refusing to suppress evidence of
   the defendant's statement that he had shaken the victim. The total-
   ity of the circumstances surrounding the making of the statement
   indicates that the statement was freely and voluntarily made.

      3. The trial court erred in allowing evidence that the defendant
   had thrown a hose nozzle at his ten-year-old son in a fit of rage
   inasmuch as the defendant never put his character in issue. The
   trial court's error, however, was harmless in light of the over-
   whelming evidence of the defendant's guilt.

      4. The trial court did not err in considering at sentencing that the
   defendant had shaken the victim more than once. The evidence

presented at trial indicated that the victims' injuries were caused by multiple shaking.

5. The trial court did not abuse its discretion in sentencing the defendant. The sentence was not disproportionality severe in light of the serious nature of the offense.

Affirmed.

CRIMINAL LAW — FIRST-DEGREE CHILD ABUSE — SPECIFIC INTENT.

The term "knowingly," as used in the statute that provides that a person is guilty of first-degree child abuse if the person knowingly or intentionally causes serious physical or mental harm to a child, means intentionally and implies a knowledge and a purpose to do harm, thus making first-degree child abuse a specific intent crime (MCL 750.136b[2]; MSA 28.331[2][2]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Dennis M. Swain*, Prosecuting Attorney, and *William E. Molner*, Assistant Attorney General, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for the defendant on appeal.

Before: MICHAEL J. KELLY, P.J., and SAAD and H. A. BEACH*, JJ.

MICHAEL J. KELLY, P.J. Defendant appeals as of right from his jury trial conviction of second-degree child abuse, MCL 750.136b(3); MSA 28.331(2)(3).[1] Defendant was sentenced to thirty to forty-eight months' imprisonment. We affirm.

On August 4, 1993, the victim in this case, a baby boy, was born to defendant and Carol Bialik. Forceps

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Defendant was originally charged with alternative counts of first-degree child abuse, MCL 750.136b(2); MSA 28.331(2)(2), and second-degree child abuse. The jury convicted defendant of second-degree child abuse.

were used during the delivery. The forceps left a bruise on the right and left sides of the victim's head.

On October 10, 1993, defendant was caring for the two-month-old victim. The victim was crying, and defendant testified that he attempted to calm him. Defendant lay on the bed and, holding the victim around the midriff, moved the victim back and forth from his chest three or four times. Defendant denied that the victim's head snapped back and forth while he was holding him.

Apparently, the victim seemed to be normal until November 17, 1993, when he suffered a seizure. On that day, defendant was again caring for the victim. Evidently, the victim started choking while defendant was feeding him. The victim's body stiffened, his eyes rolled back, his body went limp and he stopped breathing. Defendant, a trained emergency medical technician (EMT), performed some abdominal thrusts on the victim, and the victim started breathing again. The victim was then rushed to the hospital.

Upon arrival at the hospital, the victim was examined by Dr. Paul Gunderson. Dr. Gunderson discovered that the victim's fontanel[2] was bulging and his vision was deviated. A subsequent CAT scan revealed bilateral subdural hematomas,[3] injuries that are consistent with being shaken, but can also be caused by other blunt force trauma such as a fall or a blow to the head. It appeared to Dr. Gunderson that the bleeding had been occurring for three to five weeks.

---

[2] The fontanel is the soft spot at the top of an infant's head.

[3] A subdural hematoma is bleeding between the brain and its covering membrane. Bilateral means that the bleeding is present in both the left and right side of the brain.

On November 22, 1993, Michigan State Police troopers interviewed defendant. During the interview, defendant admitted that he shook the victim on a Sunday morning approximately two weeks before the November 17 seizure. At trial, defendant acknowledged that he knew it was improper to shake a baby.

Medical experts testified at trial that the victim's injuries were caused by shaking. Moreover, the experts opined that the differing ages of blood present in the victim's head indicated that more than one shaking incident may have occurred. Additionally, Dr. Liza Squires testified that the bruises that the victim suffered at birth were not related to the subdural hemotomas that caused his seizure on November 17, 1993.

On appeal, defendant first argues that the trial court erred in denying his motion for a directed verdict on the charge of first-degree child abuse because first-degree child abuse is a specific intent crime for which the prosecutor had to, but did not, prove that defendant intended to injure the victim. We hold that first-degree child abuse is a specific intent crime. However, we believe that the record reveals that there was sufficient evidence for a rational trier of fact to find that the essential elements of first-degree child abuse were proved beyond a reasonable doubt. So we find that the trial court did not err in denying defendant's motion for a directed verdict.

Whether first-degree child abuse is a specific intent crime is a question of first impression in this state.[4]

---

[4] We acknowledge that in *People v Todd*, 196 Mich App 357; 492 NW2d 521 (1992), vacated on other grounds 441 Mich 922 (1993), this Court concluded that first- and third-degree child abuse were specific intent crimes. However, because that conclusion was unnecessary to the issue raised in

"[T]he distinction between specific intent and general intent crimes is that the former involve a particular criminal intent beyond the act done, while the latter involve merely the intent to do the physical act." *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d 461 (1983); *People v Langworthy*, 416 Mich 630, 639; 331 NW2d 171 (1982). In order to determine whether first-degree child abuse is a specific intent crime, we must look to the intent of the Legislature. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *People v Stanaway*, 446 Mich 643, 658; 521 NW2d 557 (1995), cert den sub nom *Michigan v Caruso*, 513 US 1121 (1995). The first criterion in determining intent is the specific language of the statute. *People v Pitts*, 216 Mich App 229, 232; 548 NW2d 688 (1996). The Legislature is presumed to have intended the meaning it plainly expressed. *People v Roseburgh*, 215 Mich App 237, 239; 545 NW2d 14 (1996). In construing a statute, the court should presume that every word has some meaning and should avoid any construction that would render a statute, or any part of it, surplusage or nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992), reh den 440 Mich 1204 (1992). As far as possible, effect should be given to every phrase, clause, and word. *Gebhardt v O'Rourke*, 444 Mich 535, 542; 510 NW2d 900 (1994); *Jenkins v Great Lakes Steel Corp*, 200 Mich App 202, 209; 503 NW2d 668 (1993).

---

that case, whether second-degree child abuse required proof of specific intent to fail to provide food, clothing, or shelter, the *Todd* Court's indication that first- and third-degree child abuse were specific intent crimes was no more than dicta and, therefore, not binding precedent in this case.

The first-degree child abuse statute, MCL 750.136b(2); MSA 28.331(2)(2), provides that "[a] person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." Defendant argues that the trial court erroneously concluded that because the statute contained the word "knowingly," first-degree child abuse was a general intent crime. Hence, the question before us is whether the requirement in the first-degree child abuse statute that an offender act "knowingly" denotes a specific or general intent.

The word "knowingly" is not defined in the statute. Unless defined in the statute, every word of the statute should be accorded its plain and ordinary meaning. MCL 8.3a; MSA 2.212(1); *People v Gregg*, 206 Mich App 208, 211; 520 NW2d 690 (1994). If a statute does not expressly define its terms, a court may consult dictionary definitions. *Id.*, pp 211-212.

Black's Law Dictionary (6th ed) defines "knowingly" as: "With knowledge; consciously; intelligently; willfully; *intentionally*" (emphasis supplied). Given the dictionary definition of the word "knowingly" and applying the plain and ordinary meaning of the word to the language of the statute, we conclude that "knowingly" as contained in the statute means the same thing as the word "intentionally." According to the dictionary definition, the words "knowingly" and "intentionally" are synonymous. Thus, we conclude that a specific intent is required under the first-degree child abuse statute. In other words, in order to convict a defendant of first-degree child abuse, it must be shown that the defendant intended to harm the child,

not merely that the defendant engaged in conduct that caused harm.

In support of this conclusion we note that this Court has repeatedly concluded that a crime that is required to be committed "knowingly" is a specific intent crime. For instance, in *People v Lerma*, 66 Mich App 566, 569-570; 239 NW2d 424 (1976), this Court held that where a statute requires that the criminal act be committed either "purposefully" or "knowingly," the crime is a specific intent crime:

> Specific intent has been defined as "meaning some intent in addition to the intent to do the physical act which the crime requires," while general intent "means an intent to do the physical act—or, perhaps, recklessly doing the physical act—which the crime requires." LaFave & Scott, Criminal Law, p 343.
>
> A much more workable definition would center upon the several mental states set forth in the various proposed criminal codes. Analyzed in this fashion, specific intent crimes would be limited only to those crimes which are required to be committed either "purposefully" or "knowingly," while general intent crimes would encompass those crimes which can be committed either "recklessly" or "negligently." Thus, in order to commit a specific intent crime, an offender would have to subjectively desire or know that the prohibited result will occur, whereas in a general intent crime, the prohibited result need only be reasonably expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result.

In *People v American Medical Centers of Michigan, Ltd*, 118 Mich App 135, 153; 324 NW2d 782 (1982), cert den sub nom *Fuentes v Michigan* 464 US 1009 (1983), this Court held that because MCL 400.607; MSA 16.614(7) contained a requirement that a defendant "knowingly" submit a false, fictitious, or

fraudulent claim, it was a specific intent crime. See also *People v Spry*, 74 Mich App 584, 596; 254 NW2d 782 (1977), where this Court indicated that "[s]pecific intent has been defined as the subjective desire or knowledge that the prohibited result will occur."

It appears, therefore, that in this jurisdiction the word "knowingly," at least when used in a criminal context, implies a knowledge and a purpose to do wrong. Hence, "knowingly" would fall within the *Lerma* definition of a specific intent. Therefore, we hold that a specific intent is an element of first-degree child abuse. Specifically, the statute requires the doing of an act with intent to cause physical or mental harm. See *People v Todd*, 196 Mich App 357; 492 NW2d 521 (1992), vacated on other grounds 441 Mich 922 (1993). Hence, we believe the trial court erred in concluding that first-degree child abuse was a general intent crime; however, we do not believe the trial court erred in denying defendant's motion for a directed verdict.

When ruling on a motion for a directed verdict, the court must consider the evidence presented by the prosecutor up to the time the motion was made in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the charged crime were proved beyond a reasonable doubt. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993). Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime. *Id.*

The elements of first-degree child abuse are (1) the person,[5] (2) knowingly or intentionally, (3) causes serious physical or mental harm to a child.[6] With regard to the second element, as above indicated, a defendant who specifically intended to cause serious physical or mental harm to a child may be convicted of first-degree child abuse.

At trial, the only element in dispute in this case was whether defendant knowingly or intentionally harmed Joshua. Intent and knowledge can be inferred from one's actions. When knowledge is an element of an offense, it includes both actual and constructive knowledge. *People v Tantenella*, 212 Mich 614, 621; 180 NW 474 (1920); *American Medical Centers, supra,* p 154; *People v Starks*, 107 Mich App 377, 385; 309 NW2d 556 (1981). Even though the prosecutor did not specifically argue that defendant intended to injure the victim, we believe that defendant's intent to physically injure the victim could be inferred from his actions. Defendant, a trained EMT, admitted shaking the two-month-old victim and admitted that he knew it was improper to shake a baby. The victim was shaken on more than one occasion. As a result of being shaken, the victim suffered serious physical harm. From this evidence it could be inferred that defendant intended to harm the victim. Hence, although the trial court erred in holding that first-degree child abuse was a general intent crime, the

---

[5] "Person" is defined in the statute as follows: " 'Person' means· a child's parent or guardian or any other person who cares for, has custody of, or has authority over a child regardless of the length of time that a child is cared for, in the custody of, or subject to the authority of that person." MCL 750.136b(1)(c); MSA 28.331(1)(c).

[6] "Child" is defined in the statute as follows: " 'Child' means a person who is less than 18 years of age and is not emancipated by operation of law . . . ." MCL 750.136b(1)(a); MSA 28.331(1)(a).

trial court properly denied defendant's motion for a directed verdict on the charge of first-degree child abuse because evidence was presented from which it could be inferred that defendant intended to harm the victim.

Next, defendant claims that the trial court erred in failing to suppress his statement because it was not made voluntarily. We disagree. We review a trial court's determination regarding the voluntariness of a defendant's statement by examining the whole record and making an independent determination. *People v Robinson*, 386 Mich 551, 557; 194 NW2d 709 (1972); *People v Haywood*, 209 Mich App 217, 225-226; 530 NW2d 497 (1995). However, the trial court's findings will not be reversed unless they are clearly erroneous. *Id.*, 226. In this case, after reviewing the totality of the circumstances surrounding the making of the statement to determine whether it was freely and voluntarily made, we find that defendant's statement was voluntary. See *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988). Therefore, the trial court properly denied defendant's motion to suppress the statement.

Defendant next maintains that the trial court erred in admitting into evidence testimony regarding an incident in which defendant, in a fit of rage, threw a hose nozzle at his then ten-year-old son. The decision whether to admit evidence is within the trial court's discretion. An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made. *People v McAlister*, 203 Mich App 495, 505; 513 NW2d 431 (1994). It appears from the record that defendant never put his character in issue in this case. The trial court, there-

fore, improperly allowed the rebuttal testimony regarding the hose nozzle incident. MRE 404(a)(1); *People v Raisanen*, 114 Mich App 840, 845; 319 NW2d 693 (1982). However, we believe that, in light of the overwhelming evidence of defendant's guilt presented at trial, the error was harmless. MCR 2.613(A).

Next, defendant claims that his sentence was based upon the erroneous conclusion that he shook Joshua on more than one occasion. Defendant claims that there was no support in the record for this conclusion. We disagree. A trial court may not make an independent finding of guilt and then sentence a defendant on the basis of that finding. *People v Dixon*, 217 Mich App 400, 410; 552 NW2d 663 (1996). However, a trial court may consider the evidence admitted at trial as an aggravating factor in determining the appropriate sentence. *People v Shavers*, 448 Mich 389, 393; 531 NW2d 165 (1995); *People v Fleming*, 428 Mich 408, 418; 410 NW2d 266 (1987). Contrary to defendant's claim, the evidence presented at trial indicated that the victim's injuries were caused by being shaken on more than one occasion. Medical experts testified that the victim's injuries were caused by multiple shakings. The trial court properly considered this evidence when sentencing defendant.

Finally, in light of the serious nature of the offense committed by defendant, we conclude that defendant's 2½- to 4-year sentence for second-degree child abuse was not disproportionately severe. *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). The trial court herein operated within its discretion in sentencing defendant.

Affirmed.