# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DOMINIQUE DEVONTE MCMILLION,

      Defendant-Appellant.

UNPUBLISHED
March 16, 2017

No. 330128
Wayne Circuit Court
LC No. 14-010632-01-FC

Before: HOEKSTRA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of felony murder, MCL 750.316(1)(b), and first-degree child abuse, MCL 750.136b(2). This matter arises from the death of a 16-month old child, after being in defendant's care. For the reasons provided below, we affirm.

Defendant asserts that the prosecution produced insufficient evidence to sustain his conviction for first-degree child abuse and that, consequently, his conviction for felony murder must be reversed. Specifically, defendant says that the prosecution failed to provide evidence of the intent element necessary to convict him of the first-degree child abuse charge. We disagree.

As discussed in *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015):

> This Court reviews de novo sufficiency-of-the-evidence issues. To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, [appellate courts] review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. Notably, the prosecutor is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide. Further, [c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. [Quotation marks and citations omitted.]

-1-

"The elements of first-degree child abuse are (1) the person, (2) knowingly or intentionally, (3) causes serious physical or mental harm to a child." *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997) (footnotes omitted). "Serious physical harm" is defined by statute as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scale, or severe cut." MCL 750.136b(1)(f). In interpreting MCL 750.136b(2), the Michigan Supreme Court in *People v Maynor*, 470 Mich 289, 295; 683 NW2d 565 (2004), explained that

> [t]he phrase "knowingly or intentionally" modifies the phrase "causes serious physical or serious mental harm to a child." Thus, this language requires more from defendant than an intent to commit an act. The prosecution must prove that by [the defendant's act], the defendant intended to cause serious physical or mental harm to the child[] or that []he knew that serious mental or physical harm would be caused by [the defendant's act].

"In other words, in order to convict a defendant of first-degree child abuse, it must be shown that the defendant intended to harm the child, not merely that the defendant engaged in conduct that caused harm." *Gould*, 225 Mich App at 84-85.

"Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to prove the elements of a crime." *People v Lane*, 308 Mich App 38, 58; 862 NW2d 446 (2014). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). The "nature and extent" of the injuries to the child are "probative of the issue of intent." *People v Howard*, 226 Mich App 528, 550; 575 NW2d 16 (1997), citing *People v Mills*, 450 Mich 61, 71; 537 NW2d 909 (1995).

Before trial and throughout the proceedings, defendant claimed that the prosecutor failed to demonstrate that defendant knowingly and intentionally harmed the child. Defendant contended that his actions, albeit unskilled in trying to perform CPR on the child, demonstrated his intention to save her life rather than to cause her harm.

The evidence showed that the child had no significant injuries or problems, other than a small bruise to one facial cheek and crying due to hunger, before being left in defendant's care. After being left with defendant, the child incurred a multitude of injuries, including hemorrhages to the brain, nerves, spinal cord, neck and pericardial sac. Bruising was evidenced on the child's left lung and heart, in addition to a fracture of the "left ninth rib." The child also suffered lacerations to the liver and pancreas, with bleeding in the abdominal area. After performing the autopsy, Dr. Kilak Kesha opined that the injuries were incurred concurrently and could not have been the result of overly forceful striking of the child's back or misapplication of CPR. Instead, the child's head injuries were caused by multiple blows, falls, or bilateral contact with a hard surface. This testimony was supported by the treating physician, Dr. Angela Mata-Angelocci, who opined that the injuries observed were not consistent with the reports of choking or seizures by the child. Medical testing confirmed the existence of bleeding in the child's brain upon admission to the hospital. Dr. Mata-Angelocci opined that the bruising which developed while

the child was in the PICU did not result from extensive or inexpert application of CPR techniques or seizures.  Rather, she testified that the injuries were the result of harmful actions such as shaking, throwing, kicking, or punching the child.

Based on the type and extent of injuries incurred by the child, coupled with the opinions expressed by two experts that the injuries were the result of harmful actions and could not be the product of the behaviors or events described by defendant, we hold that the prosecution presented more than sufficient evidence for a jury to find that the intent element of first-degree child abuse was proven beyond a reasonable doubt.[1]

Defendant also challenges the sufficiency of the evidence to support his felony murder conviction.  He argues that because there was insufficient evidence to support his first-degree child abuse conviction, there is no underlying felony to support the felony murder conviction. See MCL 750.316(1)(b).  However, because we have determined that there was sufficient evidence to support his first-degree child abuse conviction, this claim necessarily fails.

Defendant also takes exception to the testimony of Dr. Kesha that the injuries to the minor child were the product of "inflicted trauma" or beating.  Defendant contends that Dr. Kesha's testimony improperly invaded the province of the jury and was unduly prejudicial.  We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1).  Defense counsel objected to the testimony, but the objection was premised on the view that Dr. Kesha's answer was based on conjecture or "guessing."  Thus, because the objection was on a different ground than raised on appeal, the issue is not properly preserved.  See *id.*  Review of an unpreserved evidentiary issue "is limited to plain error affecting substantial rights." *People v Ackerman*, 257 Mich App 434, 446; 669 NW2d 818 (2003).  To establish plain error a defendant must demonstrate that:  "(1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant." *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006).  Further, this Court "will reverse only when plain error results in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of the defendant's innocence." *Id.*

Dr. Kesha, as the medical examiner who performed the autopsy on the child, testified regarding the myriad of wounds incurred and their timing as part of his determination of the cause of death.  In describing the wounds, Dr. Kesha testified that the wounds were the result of "multiple blunt force trauma."  He explained that blunt force trauma involved the use of a solid object and that the nature and extent of the injuries, particularly the rib fracture, internal bleeding

---

[1] And, although there was no testimony that defendant had historically displayed any particular animus or anger toward the minor child or had engaged in harmful behaviors toward her before the events leading to the child's death, this absence or deficiency does not necessitate the reversal of defendant's conviction for first-degree child abuse.

and damage, were suspicious of child abuse. Dr. Kesha's testimony was relevant to the charges of first-degree child abuse and felony murder in accordance with MRE 401. When asked to explain his determination of the cause of death, Dr. Kesha opined that the child was the victim of "inflicted trauma." Asked for a "layman's" definition or explanation, Dr. Kesha responded, "She was beaten."

Dr. Kesha's responses were not improper or unduly prejudicial to defendant. Dr. Kesha testified regarding the injuries revealed during the autopsy of the child and explained how the specific injuries could have incurred. This information was not only relevant, but essential to his determination of the cause of death. At no time did Dr. Kesha opine on defendant's guilt or that defendant was the source of the wounds or injuries; he properly and expertly explained how such wounds could arise and clarified the meaning of the terminology "inflicted trauma." In other words, the opinion of the medical examiner was premised on the evidence, which showed that the injuries the child suffered were neither accidental nor resulted from the application of medical procedures or preexisting conditions. Therefore, Dr. Kesha's testimony regarding the cause and manner of death fell within the scope of his expertise as the medical examiner. Further, Dr. Kesha's opinion was not improper conjecture, and it did not encompass an impermissible legal conclusion nor invade the sole province of the jury.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Henry William Saad

-4-