# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KELLI MARIE WORTH-MCBRIDE,

Defendant-Appellant.

UNPUBLISHED
July 13, 2017

No. 331602
Wayne Circuit Court
LC No. 13-000575-02-FC

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right her bench trial convictions of first-degree child abuse, MCL 750.136(b)(2), and second-degree murder, MCL 750.317, arising out of the death of her three-month-old son Joshua Wilson, Jr. (Junior). Defendant was sentenced to 25 to 40 years' imprisonment for her conviction of first-degree child abuse, and to 15 to 30 years' imprisonment for her conviction of second-degree murder. We affirm.

On appeal, defendant argues the evidence was insufficient to sustain her convictions of first-degree child abuse and second-degree murder. We disagree.

This Court will review a challenge to the sufficiency of the evidence de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). "The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). In a bench trial, it is the role of the trier of fact to weigh evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008). "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*. at 619 (Citation omitted.)

## I. FIRST-DEGREE CHILD ABUSE

The elements of first-degree child abuse are "(1) the person, (2) knowingly or intentionally, (3) causes serious physical or mental harm to a child." *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997) (footnotes omitted). "Serious physical harm" is defined as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut." MCL

-1-

750.136b(1)(f). The phrase "knowingly or intentionally" modifies "causes serious physical or serious mental harm to a child," requiring more than an intent to commit an act. *People v Maynor*, 470 Mich 289, 295; 683 NW2d 565 (2004). The prosecution must prove that a defendant intended to cause serious physical or mental harm to a child through the defendant's act, or that a defendant knew that serious mental or physical harm would be caused by the defendant's act. *Id.* "[I]t must be shown that the defendant intended to harm the child, not merely that the defendant engaged in conduct that caused harm." *Gould*, 225 Mich App at 84-85.

"Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to prove the elements of a crime." *People v Lane*, 308 Mich App 38, 58; 862 NW2d 446 (2014). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Kanaan*, 278 Mich App at 622. The *Maynor* Court held that "first-degree child abuse requires the prosecution to establish, . . . not only that [the] defendant intended to commit the act, but also, that [the] defendant intended to cause serious physical harm or knew that serious physical harm would be caused by [the defendant's] act." *Maynor*, 470 Mich at 291.[1]

On appeal, defendant claims that the evidence is insufficient to prove that she had the requisite intent to commit first-degree child abuse because she did not know that serious physical injury would result if she left Junior with his father, Joshua Wilson, Sr. (Wilson).[2] This argument is not persuasive where there was ample record evidence to support the trial court's determination that defendant knew that Wilson would cause serious physical harm to Junior. For example, Sergeant David Dinsmore of the Westland Police Department testified at trial that while he interviewed defendant, she admitted that she had thrown Junior down herself, and that she had seen Wilson throw Junior and "bear hug" Junior by folding the infant in half, apparently to stop him from breathing so that he would not cry. At the time of his death, Junior also had serious injuries in various stages of healing, including fractures to his wrist, legs, ribs, and clavicles, which were estimated to be about two weeks old. Specifically, Dr. Jeffrey Jentzen, M.D., a forensic pathologist with the University of Michigan, conducted the autopsy on Junior. According to Dr. Jentzen, the injuries to Junior's tibia were consistent with "a twisting or torque injury that occurs in a child." While defendant offers myriad explanations regarding how Junior incurred these injuries that were healing at the time of his death, and claims that she was not aware of the severity of these injuries until his autopsy was performed, we are required to view the record evidence in the light most favorable to the prosecution, resolving any conflicts in the evidence in favor of the prosecution. *Kaanan*, 278 Mich App at 619. Put simply, the horrific and severe nature of the healing fractures were such that the trial court could reasonably infer

---

[1] Contrary to defendant's suggestion in her brief on appeal, a close review of the record confirms that the trial court correctly applied the applicable law set forth in *Maynor*.

[2] Joshua Wilson, Sr. was defendant's live-in boyfriend at the time that Junior died. Wilson was convicted of second-degree murder, MCL 750.317, by guilty plea, and sentenced to 27 to 60 years' imprisonment. Wilson has not filed an appeal.

that defendant knew of their existence on her infant's body, particularly where she informed the police investigating her son's murder that she personally witnessed Wilson's brutal and callous treatment of her child in the days leading up to his death. Additionally, the fact that defendant initially lied about not being present in the apartment when Junior was murdered, and then admitted that she was, is indicative of her consciousness of guilt. See *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008) ("[The fact-finder] may infer consciousness of guilt from evidence of lying or deception."). On this record, there is ample evidence to support the trial court's verdict convicting defendant of first-degree child abuse.

## II. SECOND-DEGREE MURDER

The elements that the prosecution must prove to convict a defendant of second-degree murder are "'(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.'" *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009), quoting *People v Mayhew*, 236 Mich App 112, 125; 600 NW2d 370 (1999). The definition of "malice" is "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Roper*, 286 Mich App at 84, quoting *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). "Malice . . . can be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Mayhew*, 236 Mich App at 125 (citation and quotation marks omitted). An actual intent to harm or kill is not required to be found guilty of second-degree murder, but rather, "the intent to do an act that is in obvious disregard of life-endangering consequences" will suffice. *Id.*

While defendant argues there was insufficient evidence to prove that defendant acted with malice, the record demonstrates otherwise. Specifically, the element of malice is met in this case where the record evidence clearly supports the trial court's determination that defendant acted "'in wanton and wilful disregard of the likelihood that the natural tendency of [her] behavior [was] to cause death or great bodily harm'" to Junior when she entrusted Junior to Wilson's care, knowing Wilson's history as a violent abuser of her infant son. *Roper*, 286 Mich App at 84, quoting *Goecke*, 457 Mich at 464. As noted above, defendant admitted that she personally witnessed Wilson physically abuse Junior on more than one occasion. Specifically, defendant saw Wilson throw Junior and "bear hug" the child by folding him in half on multiple occasions to essentially stop him from breathing so he could no longer cry. Defendant witnessed some of this behavior the morning of Junior's murder. Additionally, Junior's multiple healing fractures, which Dr. Jentzen opined were approximately two weeks old, were so severe that

defendant's argument that she was not aware of their severity is implausible.[3]  The record evidence amply supported defendant's conviction of second-degree murder.[4]

Affirmed.

/s/ Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[3] While the trial court expressly stated that it found defendant guilty of both first-degree child abuse and second-degree murder as a principal, we conclude the record evidence also supported a finding that defendant was also guilty as an aider and abettor.  MCL 767.39; *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

[4] To the extent that defendant maintains, in a cursory argument, that the trial court rendered inconsistent verdicts, the record reflects that defendant's trial counsel specifically requested that the trial court consider the charge of second-degree murder in deciding this case.  Accordingly, defendant cannot now argue on appeal that an inconsistent verdict is grounds for reversal.  See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) ("One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.")  (Quotation marks and citation omitted.)