# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 11, 2018

Plaintiff-Appellee,

v

No. 333476
Ingham Circuit Court
LC No. 15-000500-FC

TORION JATONE CHANDLER,

Defendant-Appellant.

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of first-degree child abuse, MCL 750.136b(2), for which the trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 30 to 62½ years' imprisonment. For the reasons explained in this opinion, we affirm.

## I. FACTS

Defendant was convicted of abusing a 20-month-old child who was entrusted to his care. The evidence at trial showed that defendant held the victim in scalding water, causing severe burns over most of the child's body. The abuse occurred in April of 2015, when the child's mother—defendant's girlfriend—left the child in defendant's exclusive care while she went to work. Defendant contacted the child's mother to report that the child had been burnt, but he offered assurances that the child appeared alright in general. Several hours later, the mother returned home and transported the child to the hospital.

Defendant initially told the mother and the police that he had drawn a hot bath for himself and that the child fell into the tub while defendant was distracted, following which defendant immediately pulled the child from the water. However, in a second police interview, when confronted with ways in which the evidence did not comport with his explanation, defendant stated that the child had come into contact with standing water in the basement, in response to which defendant subjected the child to a hot shower to clean him thoroughly.

At trial, an expert in child abuse pediatrics opined that based on the pattern of burns—i.e., considering the nature and locations of the child's burns compared to parts of the child's anatomy that were "spared" burning—the child was exposed to hot water in ways that comported with neither of defendant's versions of events. At a temperature of 123 degrees Fahrenheit,

-1-

which was the hottest temperature for the home's bathwater, "it takes somewhere between three and five minutes to get a full thickness burn," or slightly less in the case of a young child. The expert stressed that for the victim to have ended up with the full thickness burns he exhibited, his exposure to the hot water was for "not a matter of seconds," but rather "some prolonged amount of time." The expert stated that the burns were "intentional," explaining:

> I think [the child] was seated in a bathtub with the water running. I think there was a very shallow amount of water in the bathtub. And it's likely that the plug on the tub wasn't up. But even without the plug being up, some water will accumulate and then trend downwards in the tub. Not enough water accumulated in order to burn the backs of his feet. And the shallow amount of water is what burned the backs of his legs. I think that he was forcefully held down as his legs weren't bent, his feet weren't in the water. . . . He also has burns on the backs of his knees which let me know that his legs were down. And . . . one way to withdraw from pain would be to move.

> So I believe that his legs were forcefully held down. I believe that his head was . . . held backwards. And that's why you saw the burn form the top of his forehead all the way down the back. So I think that the water was running. . . . And however he was positioned, that some of that water, then dripped down over his shoulder. And that's how you got the burn over his shoulder, and that drip pattern of burn down his anterior chest.

The expert additionally testified that upon suffering the burns, the child was in immediate need of medical attention. The jury convicted defendant of first-degree child abuse, but found defendant not guilty of torture, MCL 750.85. Defendant appeals as of right.

## II. MOTION FOR A MISTRIAL

On appeal, defendant first argues that the trial court erred in denying his motion for a mistrial after a witness volunteered that defendant had been in prison. We disagree.

We review a trial court's decision on a motion for a mistrial for an abuse of discretion. *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *Haywood*, 209 Mich App at 228 (citations omitted). However, not every mention of some inappropriate subject before a jury warrants a mistrial. "[A] mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Lumsden*, 168 Mich App 286, 299; 423 NW2d 645 (1988). Generally, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *Haywood*, 209 Mich App at 228.

At issue in this case is the following testimony, given by defendant's cousin during direct examination by the prosecutor:

*Q*. Did you own a vehicle April 25th in 2015?

*A*. No.

*Q*. Now, back around that time, can you describe, please, how close was your relationship was [sic] with [defendant]?

*A*. He was locked up. He was in prison.

After this response, defense counsel initiated a bench conference, following which the witness completed his testimony with no further mention of defendant's incarceration. Then, after both sides rested, outside the presence of the jury, defense counsel moved for a mistrial on the ground that the witness's reference to defendant's imprisonment injected unfair prejudice into the proceedings. The trial court denied the motion, but indicated that it would give a special jury instruction. When giving the final jury instructions, the trial court instructed the jury as follows:

> Now, you have heard testimony from [defendant's cousin] that the Defendant may have been previously incarcerated for a non-violent crime associated with property. You may not infer from this testimony regarding an alleged prior incarceration that the Defendant is guilty of the charged crimes. This testimony must not influence your verdict.

On this record, while mention of defendant's time in prison was improper, the trial court did not abuse its discretion by denying defendant's motion for a mistrial. Defendant's cousin's statement that defendant "was in prison" was not responsive to the prosecutor's permissible question about his relationship with defendant. Further, the remark was brief, isolated, and undetailed. Defendant's time in prison was not mentioned again, and not only did the trial court instruct the jury not to let that statement influence its verdict, at defense counsel's request, the court also worked into its instruction that the imprisonment referenced was for a nonviolent property crime. Given the seriousness of the charged conduct in this case, we are unpersuaded by the assertion that a properly instructed jury would find defendant guilty of first-degree child abuse because it heard in passing that defendant had spent time in prison for a nonviolent property crime. In other words, the jury instruction in this case was sufficient to cure any minimal prejudice arising from the brief, isolated and unresponsive testimony from defendant's cousin.[1] "Jurors are presumed to follow instructions, and instructions are presumed to cure most

---

[1] Defendant suggests on appeal that the trial court's curative instruction was not fully effective because it was given as part of the array of final instructions provided just before the jury began deliberating, instead of in immediate response to the challenged testimony. See *Zuern v Tate*, 336 F3d 478, 485 (CA 6 2003) (noting that "whether the limiting instruction was immediate, clear, and forceful" is a factor to consider when determining whether a mistrial is warranted after an improper remark). However, while defense counsel initiated a bench conference following the challenged testimony, there is no indication that a jury instruction was requested at that time. Cf. *Haywood*, 209 Mich App at 229. In any event, although the jury instruction was not

errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008). Overall, any irregularity did not impair defendant's ability to receive a fair trial, and the trial court did not abuse its discretion by denying defendant's motion for a mistrial. See *Haywood*, 209 Mich App at 228.

### III. POLICE INTERVIEWS

Defendant next argues that his right to a fair trial was violated because the jury was provided with transcripts and recordings of his interviews with the police, which included several references to his involvement with the criminal justice system unrelated to the instant case. Alternatively, defendant argues that defense counsel provided ineffective assistance by failing to object to this evidence. Defendant makes these arguments in his appellate brief. However, at oral argument, defendant's appellate counsel acknowledged that a redacted version of the police interviews was introduced at trial and counsel expressly withdrew his arguments regarding the police interviews. Consequently, we need not consider the issue further.

### IV. PHOTOGRAPHIC EVIDENCE

Defendant also argues that the trial court erred in admitting photographs depicting the victim's burn injuries. Specifically, defendant argues that the photographs were not relevant because they did not depict the child as he appeared when defendant failed to seek treatment, but instead showed how the child appeared while in the hospital. Moreover, defendant contends that the "gruesome" photographs were unnecessary because the degree of injury was uncontested and adequately established by expert testimony at trial. Additionally, defendant argues that the photographs were more prejudicial than probative, particularly given the number of photographs admitted and their tendency to "arouse feelings of compassion and outrage."

We review a trial court's decision to admit photographic evidence for an abuse of discretion. *People v Ho*, 231 Mich App 178, 187; 585 NW2d 357 (1998). "Evidence is generally admissible if it is relevant, i.e., has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *People v Davis*, 320 Mich App 484, __; __ NW2d __ (2017); slip op at 2 (citations and quotation marks omitted). However, under MRE 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Consequently, "[p]hotographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions." *People v Mills*, 450 Mich 61, 76-77; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995) (citation and quotation marks omitted). "However, if photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the

---

immediately given, in light of the brief and isolated nature of the improper remark as well as the well-crafted curative instruction, we do not agree with defendant's assertion that the timing of the instruction undermined its effectiveness.

jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *Id.* at 77 (citation and quotation marks omitted).

In this case, the photographs were clearly relevant. When a defendant pleads not guilty, all elements of a crime are at issue, and the prosecutor "must carry the burden of proving every element beyond a reasonable doubt, regardless of whether the defendant specifically disputes or offers to stipulate any of the elements." *Id.* at 69-70. "The elements of first-degree child abuse are (1) the person, (2) knowingly or intentionally, (3) causes serious physical or mental harm to a child." *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997). Defendant was also charged with torture, which, among elements, required the prosecutor to prove that defendant inflicted "great bodily injury" and that defendant intended "to cause cruel or extreme physical or mental pain and suffering." See MCL 750.85(1); M Crim JI 17.36. Thus, in light of these elements, the photographs in this case were relevant to establishing that the victim suffered "great bodily injury," MCL 750.85(1), and that defendant caused "serious physical" harm to a child, MCL 750.136b(1)(f) and (2). Likewise, the nature of the child's injuries, as depicted in the photographs, was relevant to establishing defendant's intent. Cf. *Davis*, 320 Mich App at __; slip op at 2. More specifically, the pattern of the burns on the child's body, as shown in the photos, tended to disprove defendant's accidental explanation for the child's burns and, as explained by the expert, to establish that the child was deliberately held in scalding water. Cf. *Mills*, 450 Mich at 71-72, 77-78. Insofar as defendant emphasizes that the photographs showed the victim in the hospital rather than immediately after he was burnt, this does not undermine the relevancy of the photographs, which accurately depicted the extent and nature of the injuries suffered by the victim as a result of defendant's actions. See *Davis*, 320 Mich App at __; slip op at 2. Because the photographs were relevant, they were generally admissible under MRE 402.

It is also clear that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice so as to require exclusion under MRE 403. Although the photographs can be characterized as graphic and gruesome, "[g]ruesomeness alone need not cause exclusion." *Mills*, 450 Mich at 76. Likewise, while defendant argues that expert testimony could have been used without the photos to establish the nature and extent of the victim's injuries, "[p]hotographs are not excludable simply because a witness can orally testify about the information contained in the photographs." *Id.* Insofar as defendant complains about the number of photographs admitted, we note that the trial court did not admit all of the prosecutor's proposed photographs. Cf. *id.* at 78. Rather, after viewing the photographs, the trial court excluded photographs that appeared "duplicitous," explaining that the admitted photographs showed different angles and portions of the child's anatomy as relevant to demonstrating the burn patterns. We see nothing in the number of photographs that renders their admission unduly prejudicial. Overall, while the photographs may have been difficult to view, the photographs' substantial probative value in establishing the nature of the child's injuries and defendant's intent was not substantially outweighed by the danger of unfair prejudice. See MRE 403; *Mills*, 450 Mich at 79-80. The trial court did not abuse its discretion by admitting these photographs.

V. OFFENSE VARIABLE 7

Finally, defendant argues that he is entitled to resentencing on the ground that the trial court erroneously assessed him 50 points for offense variable (OV) 7. Defendant notes that he

was acquitted of torture, and defendant asserts that there is no evidence he intended to harm the child, particularly given that the incident injuring the child lasted only a few minutes. Additionally, to the extent the trial court considered defendant's failure to obtain medical treatment for the child, defendant argues that he did attempt home remedies and that he was unaware of the extent of the child's injuries.

For purposes of the sentencing guidelines, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence," but "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). OV 7 addresses "aggravated physical abuse." MCL 777.37(1). Specifically, MCL 777.37(1)(a) prescribes a score of 50 points when the offender treated the victim "with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."[2] In scoring OV 7 at 50 points in this case, the trial court offered the following explanation:

> I think the record is ample with the actual injury, the delay in getting treatment for the child, that medical testimony said placed the child on the verge of death. But for prompt medical treatment, the child would have died.
>
> So the Court is going to assess 50 on the grounds that there was ample evidence on the record to support the charge of brutality, excessive brutality.

Thus, it appears that the trial court scored OV 7 based on the conclusion that defendant treated the child with "excessive brutality." This finding was not clearly erroneous.

For purposes of OV 7, this Court has explained that "excessive brutality requires savagery or cruelty beyond the usual brutality of a crime." *People v Steanhouse (On Remand)*, __ Mich App __, __; __ NW2d __ (2017) (Docket No. 318329); slip op at 4. Defendant was convicted of first-degree child abuse which involves some amount of savagery or cruelty insofar as it requires a person to "knowingly or intentionally" cause "serious physical or serious mental harm to a child." MCL 750.136b(2). In this context, "serious physical harm" refers to "any physical injury to a child that seriously impairs the child's health or physical well-being," including a "burn or scald." MCL 750.136b(1)(f). In committing first-degree child abuse, the facts show that defendant held the toddler under scalding (123 degree Fahrenheit) water for "some prolonged amount of time" of approximately three to five minutes. Defendant's actions resulted in severe burns over 60% of the child's body, and the majority of these burns were "full thickness burns." After inflicting these injuries, despite admitting to police that he thought the

---

[2] MCL 777.37(1) was amended by 2015 PA 137, which became effective January 5, 2016. However, the instant offense occurred in April of 2015, and we consider the trial court's scoring decision under the version of the statute in effect on the date the crime was committed. See MCL 769.34(2). Thus, we consider MCL 777.37(1)(a) as amended by 2002 PA 137.

child might "die," defendant did not seek medical treatment for the child; instead, at most, he attempted some home remedies such as applying sunscreen. When the child eventually received medical treatment, he was in a critical and life-threatening condition. Indeed, one of the experts stated that "[t]he delay in medical treatment nearly killed him," and she described the child as "one of the sickest burn patients" that she had seen in her career. The child was airlifted to the burn center at the University of Michigan, and he later underwent three skin graft surgeries.

On the whole, these facts support the trial court's finding of excessive brutality. First-degree child abuse could have been accomplished without burning 60% of the child's body and inflicting full-thickness burns, and we do not think such extreme brutality can be considered "usual," even among cases of first-degree child abuse. See *Steanhouse (On Remand)*, __ Mich App at __; slip op at 4. Considering the extent of defendant's brutality in inflicting such extreme injuries, the trial court did not clearly err by concluding that defendant engaged in savagery or cruelty beyond the usual brutality of the crime. See *id.* Moreover, as emphasized by the trial court, after inflicting injury, defendant failed to obtain medical assistance for the child for over 8 hours. Given the extent of the child's injuries, to withhold medical treatment for 8 hours was savagery and cruelty beyond what can be considered "usual" brutality for first-degree child abuse. See *id.* The trial court's findings were not clearly erroneous, and the trial court did not err by scoring OV 7 at 50 points.

Affirmed.


/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Brock A. Swartzle