*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 23, 2023

Plaintiff-Appellee,

v

No. 359610
Kent Circuit Court

TATIANA ELENA FUSARI,

LC No. 18-009246-FC

Defendant-Appellant.

Before: K. F. KELLY, P.J., and BOONSTRA and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right her jury-trial convictions of felony murder, MCL 750.316(b), and first-degree child abuse, MCL 750.136b(2). The trial court sentenced defendant to life imprisonment for the felony murder conviction and a prison term of 180 to 360 months for the first-degree child-abuse conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant and her husband, Seth Welch, had a daughter, MA, in 2017.[1] In 2018, ten-month old MA was found dead from malnourishment and dehydration. Defendant and Welch were arrested and charged with felony murder and first-degree child abuse. Shortly after Welch was convicted of the charged crimes, defendant pled no contest to second-degree child abuse and second-degree murder, with an agreed-upon minimum sentence of 25 years' imprisonment.

Approximately four months after defendant entered her plea, she moved to withdraw it, based on the Michigan Supreme Court's recent holding that "duress may be asserted as an affirmative defense to felony murder if it is a defense to the underlying felony." See *People v Reichard*, 505 Mich 81, 96; 949 NW2d 64 (2020), overruling *People v Reichard*, 323 Mich App 613, 619; 919 NW2d 417 (2018) (in which this Court concluded that the trial court had erred by allowing the defendant to raise duress as an affirmative defense to felony murder). On the basis

---

[1] Defendant and Welch also have two older children.

of this change in the law, defendant moved to withdraw her plea under MCR 6.310(B), which allows a defendant to withdraw a plea before sentencing if justice will be served and the prosecution will not be substantially prejudiced. In a supplemental affidavit submitted in support of her motion to withdraw, defendant asserted that Welch had "systematically and continuously physically, emotionally, and mentally abused [her]. That abuse prevented [her] from caring for the proper health and welfare of [her] child . . . ." The trial court concluded that defendant had met her burden under MCR 6.310(B) and allowed defendant to withdraw her plea, but it cautioned her that she was risking life in prison and that if she did not establish a sufficient factual predicate for a duress instruction, the trial court would not give one.

At trial, several witnesses testified to their observations that MA had an emaciated appearance in the months before her death: she was small, had sunken eyes and cheeks, her spine was visible, and she lacked muscle mass. MA's autopsy showed external and internal signs of malnourishment that would have taken weeks to develop, and the medical examiner testified that any adult who saw MA would know that she was malnourished. Several witnesses also testified that they knew defendant before and after she met Welch, and that her personality had changed noticeably after she started dating him. Defendant presented the testimony of an expert witness about the dynamics of domestic violence. Defendant testified regarding Welch's physical violence, rulemaking and rule enforcement, threats, and economic and emotional abuse. Defendant testified that she had internalized Welch's narrative and that, out of fear of physical punishment, she did not question him when he told her that MA's weight and listlessness were not a cause for concern and prohibited her from taking the child to the doctor. Defendant also denied that she had withheld food from MA, stating that she breastfed, gave MA infant formula, and fed MA jars of liquified fruit and vegetables multiple times per day. She testified that she took the children, including MA, out in public frequently during June and July 2019, unaccompanied by Welch.

After defendant testified, defense counsel requested that the jury be instructed regarding the affirmative defense of duress. The trial court declined to give the instruction, concluding that defendant had maintained that she had not abused or neglected MA and that she therefore had not established her entitlement to an affirmative defense instruction. The jury convicted defendant as described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence presented at trial to maintain her conviction of first-degree child abuse. We disagree. This Court reviews a challenge to the sufficiency of the evidence by reviewing the evidence de novo "in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." See *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "Because it is difficult to prove an actor's state of mind, the prosecution may rely on minimal circumstantial evidence to prove that the defendant had the required mental state." *People v McFarlane*, 325 Mich App 507, 516; 926 NW2d 339 (2018). "Intent and knowledge can be inferred from one's actions." *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997).

A person who "knowingly or intentionally causes serious physical harm or serious mental harm to a child" is guilty of first-degree child abuse. MCL 750.136b(2). Defendant does not deny that MA suffered serious physical harm, but contends that sufficient evidence was not presented that she had intentionally or knowingly starved her daughter to death. The record does not support her position. Numerous witnesses testified that they observed obvious physical signs of malnourishment in MA. A witness who saw MA the month before her death testified that she thought the child was "too small" and did not look right, and that she never saw the child move. Another witness described MA as "a little ashy" and said that she appeared to be losing weight. A friend of defendant's who saw MA at a June 2018 barbeque said that the child felt very small and that one could feel her spine. A paramedic called to the scene of the child's death testified that the 10-month-old MA appeared to be the size of a newborn and that she had sunken cheeks and was emaciated. The medical examiner testified that any adult interacting with MA would recognize that she was severely malnourished. The jury also heard testimony indicating that defendant knew that her daughter's condition was atypical. Defendant would explain her daughter's small size by saying that she had been born prematurely (although the midwife testified that MA was born at 37 weeks and would not experience long-term developmental delays), or insist that she had been feeding her. The jury also heard evidence that MA's dehydrated and malnourished condition developed over time. The medical examiner testified that the infant's eyes were sunken, her ribs and spine were visible, she lacked muscle tissue in her arms and legs, her skin was wrinkled and tented, and she weighed only eight pounds. The medical examiner further testified that it would have taken weeks for external signs of malnutrition and dehydration to develop. Defendant testified that she fed MA the majority of the time, apart from when she was at work.

Viewing this evidence in the light most favorable to the prosecution, *Meissner*, 294 Mich App at 452, and drawing all reasonable inferences in favor of the jury verdict, *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), a rational jury could determine that defendant was, or should have been, aware that MA was suffering increasingly severe harm, in the form of malnourishment, as a result of her care. The evidence was therefore sufficient to support her conviction of first-degree child abuse.

## III. DURESS INSTRUCTION

Defendant also argues that the trial court erred by refusing to instruct the jury on the defense of duress. We disagree. "Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). A trial court does not abuse its discretion if its decision results in an outcome within the range of reasonable and principled outcomes. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

Duress is a common-law affirmative defense that may apply when a crime is committed to avoid a greater harm. *People v Lemons*, 454 Mich 234, 245-246; 562 NW2d 447 (1997). "In order to properly raise the defense, the defendant has the burden of producing some evidence from which the jury can conclude that the essential elements of duress are present." *Id*. at 246 (quotation marks and citation omitted). A defendant meets this burden by introducing some evidence from which the jury could conclude the following:

-3-

> A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;
>
> B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;
>
> C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and
>
> D) The defendant committed the act to avoid the threatened harm. [*Id*. at 247.]

In addition, the threatening conduct must be "present, imminent, and impending," in that a "threat of future injury is not enough." *Id*. (quotation marks, citations, and brackets omitted).

In this case, defendant testified at length about Welch's domestic violence and emotional and sexual abuse. However, defendant repeatedly insisted that she did not commit first-degree child abuse, that she did not participate in MA's death by starvation and dehydration, and that she did not kill her baby. Despite evidence that MA had been malnourished for weeks, defendant insisted that she nursed her at least twice a day and gave her four to six jars of fruit and vegetables, along with formula, right up until the day before MA's death. Defendant testified that she fed her daughter as often as she could and as often as the infant would eat.

To be entitled to raise a duress defense, defendant had to present some evidence on each of the elements identified in *Lemons*, including that she knowingly or intentionally caused serious physical harm to her daughter in order to avoid a greater harm. See *id*. at 246. By denying that she participated in MA's death in any way, defendant failed to present evidence that she "committed the act to avoid the threatened harm." *Id*. at 247. Accordingly, defendant's testimony did not warrant a duress instruction. See *id*. at 249. Because defendant did not establish a prima facie defense of duress, the trial court did not abuse its discretion by rejecting her request for an instruction on duress. See *id*. at 250.

Defendant argues in the alternative that if the trial court did not abuse its discretion by denying her request for a duress instruction, then her vacated plea should be reinstated. Defendant argues that the trial court's grant of her motion to withdraw her plea entitled her to assume that she had established a prima facie defense of duress so as to be entitled to a jury instruction. The record does not support defendant's argument.

Defendant moved to withdraw her plea under MCR 6.310(B) on the basis of the change in law resulting from the Michigan Supreme Court's holding in *Reichard*, 505 Mich at 96. Whether defendant's affidavit established a prima facie defense of duress, or whether defendant could present evidence at trial that was legally sufficient to warrant a duress instruction, was not relevant to her burden under MCR 6.310(B)(1). Further, the trial court clearly stated that its decision to allow defendant to withdraw her plea was based on this change in the law, and that the availability of a duress instruction was a fact-specific inquiry that would be conducted at trial. The trial court

explicitly warned defendant of the risk that she might not receive such an instruction. Her argument that her plea-based convictions and sentences should be reinstated is without merit.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra
/s/ James Robert Redford